[PHILADELPHIA, JANUARY 16, 1838.]

## STUCKERT *against* ANDERSON.

### IN ERROR.

1. A notice sent through the post office to the maker of a note, is not such a demand as the law requires, where his residence is supposed to be ascertained.
2. Where the notary was informed, on injury, that the maker resided in or near a post-town in an adjoining county, it was held that a demand sent through the post office was not sufficient to charge the endorser.
3. Where a note has been discounted by a bank, it seems that it would not be due diligence, if the notary inquired only of the directors and officers of the bank, respecting the residence of the first endorser.
4. It is settled, that whether or not due diligence was used in making inquiry for the endorser, is a mixed question of law and fact: The Court are to give their opinion on the law to the jury according to the circumstances as they appear; but the jury must decide the fact whether there was due diligence or not.

ERROR to the Court of Common Pleas of Bucks County.

The action in the Court below was assumpsit, brought by John H. Anderson against George Stuckert, on a promissory note for $194 17, dated the 17th day of June, 1835, at ninety days, drawn by Thomas M. Jones, in favour of Stuckert, the defendant, and endorsed by him to Anderson, the plaintiffs.

*On the trial before Fox, President, it appeared that [*117] the note had been discounted by the Doylestown Bank for Anderson: and the notary of that bank was produced as a witness, and testified as follows :—

"This note was delivered to me by one of the officers of the Doylestown Bank, on the 18th of September, 1835, for protest. I called on Mr. Anderson the same afternoon, and gave him a notice that the note was due and unpaid ; and I also inquired of Mr. Anderson, and of the officers of the bank, and I think of Mr. Yardley, one of the directors, the nearest post office to Thomas M. Jones and George Stuckert. I made out notices to them, of which I produce copies ; and placed them, on the said 18th of September, in the post office in Doylestown. Stuckert's notice was sent to either the Richboro' post office in this county, or to Philadelphia ; and Jones's was sent to Holmesburg post office ; both notices were duly directed to them at those places. From the best information I could obtain on inquiry, I sent notices to the post offices nearest to where said Stuckert and Jones lived. I did not know where Stuckert lived at the time I sent the notice, but upon inquiry I directed the notice to the place where I believed him to live at the time. I am and was a notary public at the time of sending the notices. The note was

(Stuckert *v.* Anderson.)

handed to me for protest by the proper officers of the bank. I called on Mr. Anderson, he paid me the amount of the note, and I gave the note to him and paid the amount next morning in the bank. He paid me the same afternoon I gave the notice."

The notices to the maker and endorser, of which copies were produced by the notary, were in the usual form.

The learned judge charged the jury that if they believed the evidence, the plaintiff had made out his case, and was entitled to recover the amount of the note with interest.

The jury accordingly found for the plaintiff; and the defendant having taken a bill of exceptions, removed the record to this Court, and assigned for error the direction in the charge below.

Mr. *Troubat,* for the plaintiff in error, contended that the demand and notice in this case were not sufficient to charge the defendant, and that the Court erred in directing the jury to find for the plaintiff if they believed the testimony, since the question of due diligence was in some measure one of fact for the jury. Upon these points he cited *Monroe* v. *Easton,* (2 Johns. Cas. 75); *Berry* v. *Robinson,* (9 Johns. Rep. 121); *Griffin* v. *Goff,* (12 Johns. Rep. 423); *May* v. *Coffin,* (4 Mass. Rep. 341); *Jackson* v. *Richards,* (2 Caines' Rep. 343); *Lazarus* v. *Aubin,* (2 M'Cord's Rep. 134); *Blakely* v. *Grant,* (6 *Mass. Rep. [*118] 386); *Disborough* v. *Vanness,* (3 Halsted, 231); *Kirkpatrick* v. *Howell,* (1 Harper's Rep. 426); *Gurley* v. *Gettysburg Bank,* (7 Serg. & R. 224); 3 Kent's Com. 95; *Stewart* v. *Allison,* (6 Serg. & R. 324); *Whittier* v. *Grafton,* (3 Greenleaf, 82).

Mr. *Miles, contra,* argued that actual demand on the maker of the note was not necessary under the circumstances; and that due diligence had been used in endeavouring to make a demand. *Duncan* v. *M'Cullough,* (4 Serg. & R. 480); *Price* v. *Young,* (1 M'Cord's Rep. 339); *Putnam* v. *Sullivan,* (4 Mass. Rep. 45); *Burridge* v. *Burgess,* (3 Campbell, 262); *U. States* v. *Barker,* (12 Wheat. 559); *Muilman* v. *D'Eguino,* (2 H. Bl. 569); *Heylin* v. *Adamson,* (2 Burr. 669); *Bateman* v. *Joseph,* (2 Campbell, 461); *Chapman* v. *Lipscombe,* (1 Johns. Rep. 294); *Fisher* v. *Evans,* (5 Binn. 541); *Smedes* v. *Utica Bank,* (20 Johns. Rep. 372; s. c. 3 Cowen, 662); *Smith* v. *Washington Bank,* (5 Serg. & R. 322); *Smyth* v. *Hawthen,* (3 Rawle, 355).

2. That reasonable notice and due diligence are questions of law, whenever under a given state of circumstances, a fixed rule has been settled. 1 Starkie's Evid. 416, 425; Bailey on Bills, 102; *Darbishire* v. *Parker,* (6 East, 11); *Parker* v. *Gordon,*

(Stuckert *v.* Anderson.)

(7 East, 386); *Bank of North America* v. *M'Knight,* (1 Yeates, 147).

The opinion of the Court was delivered by

SERGEANT, J.—The promissory note, in the case before us, was not dated or payable at any particular place. It was discounted in the Doylestown Bank, and taken up by the plaintiff in consequence of remaining · unpaid. Objections were made on the trial, to the want of proof of a demand on the maker, and also as to the notice to the endorser, (the defendant,) who was the payee.

1. It is the duty of the holder of a promissory note, if he intends to charge the endorser, to make a demand of payment on the maker, at the maturity of the note, unless there exists some legal excuse for omitting it. A notification to the maker through the post office is not such a demand as the law requires, when the maker's residence is supposed to be ascertained. The holder, or his agent, should call on the maker and present the note, and demand payment of it. From the inquiry made by the notary here, it was inferred that the maker resided in or near Holmesburg, a town in the adjacent county of Philadelphia—and it was the duty of the bank, or its agent, to search there for the maker. If this duty has not been fulfilled, the maker remains responsible but the endorser is discharged. This seems to be the settled law as to bills of exchange and promissory notes, and is, I believe, the usual practice. See Chitt. Bills. 385; 9 Pick. 420, and cases cited by the counsel for the plaintiff in error.

*2. As to notice to the endorser, the defendant in this suit. The rule is, that if the endorser live in a different [*119] post-town from that of the holder, a notice to the endorser, through the post office, is good. 5 Serg. & R. 322; 11 Johns. 231; 7 Mass. 483; 1 Pick. 401.* In the present case the notary says he sent the notice to the place where, from the inquiry he made, the endorser lived, and that was either Richboro' post office, in Bucks county, or Philadelphia. A jury might infer from this evidence, that this notice was sent to the place where the witness was informed the endorser resided, though it is obscurely given; and it seems to me that a notary, or agent, who undertakes to give notice, ought to keep a memorandum of his proceedings, and speak with more exactness. But supposing it might be inferred he sent the notice to the endorser's residence as he was informed, yet the question remains whether he used due diligence in making inquiry on the subject, or was guilty of

* See 9 Watts, 278; 8 Watts & Sergeant, 14, 138; 5 Barr, 160, 181; 7 Id. 437; 2 Harris, 378; 8 Wright, 87; 9 P. F. Smith, 82.

(Stuckert *v.* Anderson.)

laches.   He inquired of the plaintiff, (the last endorser,) of a director of the bank, and of the officers of the bank.   As to the latter, though their information might be sufficient as between them and the notary, yet it seems to me it would not be as to a third person.   The bank was then the holder, and the statement of their directors, or officers, ought to be verified by some other proof, or at least it should appear what information they had or were likely to have, or that there were not other sources of information reasonably within the reach of the agent.   If there were, he was bound to resort to them, and it was a want of due diligence not to do so.   As to the inquiry of the plaintiff, it would rather seem from the weight of the authorities, to have been sufficient in the absence of any other evidence on the subject.   It was held in one case, to be reasonable diligence to inquire at the drawee's for the residence of the payee.   Wightw. 76, cited Chitt. Bills, 487.   In a subsequent case, an inquiry at the place where the bill was payable was deemed insufficient.   3 Campb. 262, cited *Ib.*   In *Browing* v. *Kinnear*, (Gow's Rep. 81,) cited *ibid.*, the defendant endorsed to Newman, he to Maberly, he to Chesterman, and he to plaintiff.   The bill became due the 23d November.   On the 24th the plaintiff applied to Chesterman, to know where the defendant lived.   Chesterman could not tell him, and referred him to Maberly.   He called on Maberly at 4 P. M., but Maberly not being at home, he did not call again till next morning, and then Maberly gave him the information, and he gave notice to the defendant.   Dallas, C. J., left the question of reasonable diligence to the jury, stating his opinion that due diligence had been observed.

But without further examining this point it is sufficient to say, it is now settled, that whether or not due diligence was used in making inquiry, or there was laches, is a mixed question of law and of fact.   The Court are to give their opinion on the law to the jury, according to the circumstances as they appear, but the jury must decide the fact, whether due diligence or not, subject, [*120] of course, to review *on motion for new trial, as in other cases.   Chitt. Bills, 486.   The Court charged, that if the jury believed the evidence, the plaintiff had made out his case, and was entitled to recover the amount of the note, and the interest which had accrued upon it, thus taking away the fact from the jury.*

KENNEDY, J.—The main question here, and one which, if the jury had been rightly advised in regard to it, would have disposed of the whole case, is, was there any evidence given on the trial of

* See 6 Watts & Sergeant, 401 ; 5 Barr, 180 ; 6 Harris, 262.

the cause, showing a presentment of the note at maturity to the maker for payment, by the bank, and a demand thereof made upon him? On the day the note fell due, the bank put it into the hands of a notary public, for the purpose, as may be inferred from the evidence, of presenting it to the maker for payment; and in case of his refusal or failure to pay, to give immediate notice thereof to the endorsers. But it appears, by the testimony of the notary, which was the only evidence given in this respect, that the note was not presented to the maker at all for payment, nor any demand thereof made upon him; nor yet even any diligence used in order to effect it: but that he (the notary) being told, upon inquiry, that the maker resided at or near Holmesburgh, a village some few miles distant from the bank, in an adjoining county of the state to that in which the bank is located, merely sent a notice addressed to the maker by mail to the Holmesburgh post office, demanding payment, as we may presume, though it was not expressly testified, of the note, on behalf of the bank. Now in order to make the plaintiff in error liable as endorser to pay the note, it being payable generally, without any mention of place for that purpose, the notary public, or some other person authorised by the bank ought, on the last day of grace, that being the time the note became due, to have called with it in his possession upon the maker, at his residence or place of business, presented it, and demanded payment; and if he failed to pay, then to have given immediate notice thereof to the plaintiff in error; or to have placed such notice in the post office for him, so that it might have been transmitted thence by the first mail to the post office most convenient or nearest to his residence. Poth. pl. 129; Chitty on Bills, (8th ed.) 398, 401, 402, 410, 411, 502, 503, 504, 505; *Renner* v. *Bank of Columbia,* (9 Wheat. 585); *Mills* v. *The Bank of the United States,* (11 Wheat. 438); *Anderson* v. *Drake,* (14 Johns. 114); *Woodbridge* v. *Brigham,* (13 Mass. 556.) Such demand upon the maker cannot be dispensed with, excepting where, upon reasonable diligence being used in making search and inquiry for him, he cannot be found within the state; otherwise the endorser will be discharged from his liability for payment of the note. Endorsing a negotiable note, and perhaps one in its terms not negotiable, is similiar in its nature and effect to drawing a bill of exchange; and the obligation, which arises from the doing of the first, is similiar *to that which arises from the doing of the second. The endorsement "is an order by the endorser upon the [*121] maker to pay the endorsee, which, as Lord Mansfield says in *Heylen* v. *Adamson,* (1 Burr. 676, 677), is the very definition of a bill; the endorser is the drawer, the maker of the note the ac-

(Stuckert *v.* Anderson.)

ceptor, and the endorsee the person to whom it is made payable. The endorser only undertakes *in case* the maker of the note does not pay. The endorsee is *bound* to *apply* to the *maker* of the note. He takes it *upon that condition;* and therefore must in *all* cases *know who he is* and *where he lives;* and if, after the note becomes payable, he is guilty of neglect, and the maker becomes insolvent, he loses the money, and cannot come upon the endorser at all. Therefore, before the *endorsee of a promissory note* brings an action against the *endorser*, he must show a *demand,* or *due diligence* to get the money from the maker of the note; just as the person to whom the bill of exchange is made payable must show a *demand* or *due diligence* to get the money from the *acceptor* before he brings an action against the *drawer.* This was determined by the whole Court of Common Pleas, upon great consideration, in Pasch., 4 Geo. 2, as cited by my Lord Chief Justice Lee, in the case of *Collins* v. *Butler,* (2 Stran. 1087)." And in this case of *Collins* v. *Butler,* which · was a suit by the endorsee against the endorser of a note, that had become payable the 27th of December, 1732, when the drawer had. shut up his house and gone away the November before, it was *held,* that in order to charge the endorser, a *demand* on the *maker* was necessary; and showing that he had shut up his house and gone away was not sufficient to dispense with an actual demand; but that the plaintiff ought to have gone further, and shown that he had *inquired* after him or *attempted to find him out.* It may be thought, however, that this latter point was ruled differently in *Hine* v. *Allely,* (4 Barn. & Adol. 624; s. c. 24 Eng. Com. Law, 127; 1 Nev. & Man. 433); in an action by the holder against the drawers of a bill of exchange: the bill was drawn upon "P. P. No. 6, Budge Row," and accepted by him, and the declaration contained an averment that the bill, when due, was presented and shown to P. P., for payment; and it was held by the Court that the averment was supported by proof that the holder went on the day·that the bill fell due to No. 6 Budge Row, to present it for payment, and found the house shut up and no one there; and that notice might be given to the drawers on the day of such dishonour, as in the case of an actual refusal to pay. If the Court considered No. 6 Budge Row, as a place mentioned for the payment of the bill by the acceptor, then their decision may be consistent with what was determined in *Collins* v. *Butler;* but otherwise it would seem to impugn it, so far as calling at the late dwelling-house of the maker of the note, and finding it shut up, was held not to be sufficient without some further attempt to find him. Still, however, either case, viewed under any possible aspect in which it

(Stuckert *v.* Anderson.)

may *present itself, goes to show that diligence must  [*122]
be used by the holder of the note to obtain the money
from the maker of it by presenting the note to him, and demand-
ing payment, or by going, at least, to his present or late dwel-
ling for that purpose; or otherwise the drawer of the bill or
endorser of the note, cannot be called on for payment of the
money.

Here, as it seems, in this case, the notary public was informed
that the maker of the note resided at or near to Holmesburg,
but he neither went thither himself, nor forwarded the note to
any person there for the purpose of demanding payment of it:
instead of doing this, as he ought, he merely sent by mail to that
place a written notice addressed to the maker of the note, de-
manding payment thereof for the bank as the holder of it.    But
clearly, this was not such a demand of payment as is required
by law, in order to charge the endorser.    The residence of the
maker being ascertained and known, the demand ought to have
been made there by a person duly authorised and having posses-
sion of the note from the bank, so that he might have given it
up upon receiving payment thereof.    For this purpose the note
might have been sent in due time by the mail to some one with
an authority to have presented it and demanded payment
thereof on the day it fell due.    But the benefit of the post office,
as Mr. Justice Johnson says, in delivering the opinion of the
Supreme Court of the United States, in *M'Gruder* v. *The
Washington Bank*, (9 Wheat. 601), is not allowed for such
purpose, by addressing a notice or demand of payment through
it, to the maker himself, as in the case of a notice to the
endorser.    In short, it does not even appear here, that the
maker of the note was ever advised of the Bank's being the
holder of it.

From the case of *The Boston Bank* v. *Hodges, et al.* (9 Pick.
421), it appears to be the usage of the banks in the city of
Boston, to send notice to the maker of notes on the last day,
exclusive of the days of grace, and again on the last day of
grace *after* bank hours, and to send notices to the makers and
endorsers of notes which are not paid.    The Court there seemed
to think, that this usage, if strictly observed by the banks,
would be sufficient to make the endorsers liable, as they would
be presumed to have a knowledge of it.    But the Court held,
that because the usage had not been strictly complied with there,
inasmuch as the notice to the drawer of the note was not put
into post office *after*, but *before* the bank hours on the last day
of grace, the endorser was exonerated; though the Court said
distinctly, that had there been " an *actual demand* upon the
maker, according to the *general rule of law*, on *any part* of that

(Stuckert *v.* Anderson.)

day," with notice of non-payment to the endorser, it would have been sufficient to have charged the latter.

Upon inquiry, I find that the practice of the banks in this city has been to give notice to the acceptor of a bill of exchange or maker of a promissory note some days previously to its becoming due, of [*123] *its being held by the bank in possession of it, and of the day that it will fall due; and if not paid on the day it becomes due, which is the third day of grace, unless that should happen to fall out on Sunday, or the fourth day of July, and then the second day of grace, before the close of banking hours, then forthwith to place it in the hands of a notary public; who, when there is no particular place assigned in the bill or note for payment, either by himself or his clerk, on the same day, calls upon the acceptor or maker with the bill or note, at his dwelling, or place of business, if it should be different from that of his dwelling, and demands payment: and in case payment be not made, he protests the bill or note for non-payment, and gives immediate notice thereof by means of the post office or of a special messenger to the drawer and endorsers, so far as they are intended to be looked to for paymemt.

As to foreign bills of exchange, this would seem to be in conformity to the practice which obtains in England: but as to inland bills of exchange and promissory notes, a notary public is not employed there for the purpose of presenting and protesting them for non-payment, nor is it required by law here, though I believe it has long been the practice. In England, the holder of bills or notes, whether foreign or inland, himself or by his agent, *presents* the same for payment on the day they fall due, between nine in the morning and five in the evening; and if not paid, he then sends all his *foreign* bills to a regular notary public, who sends one or more of his clerks round with such bills, in the evening, to the respective drawees' *residences,* and *there produces* the bills and again *requires payment,* and of the charges for noting; and if not paid, he reports to his principal the terms of the refusal, and the notary afterwards, at his leisure, or as soon as required, draws up his final protest. Chitty on Bills, 493, (8th ed). Mr. Chitty, however, seems to think, that the notary himself ought to present a *foreign bill* for payment in order to justify him in protesting it for non-payment, because it is to him, as a public officer, that credit is given in such case. And Mr. Justice Buller would seem to have entertained the same opinion. See *Leftley* v. *Mills,* (4 Term. Rep. 175). But the Association of Liverpool Notaries and the Society of London Notaries, not only advocate, but practice upon a different principle, as already mentioned. (See a correspondence between Mr. Chitty and these societies, on this subject, in note to his Treatise on Bills, pages,

493–4–5–6).   The judgment ought to be reversed, and a *venire facias de novo* awarded.

Judgment reversed, and a *venire de novo* awarded.

Cited by Counsel, 1 Watts & Sergeant, 127 ; 6 Id. 263, 508 ; 7 Id. 265 ; 5 Barr, 180 ; 1 Jones, 458 ; 12 Harris, 223 ; 6 Casey, 141 ; 5 Wright, 220 ; 2 Miles, 258.

Cited by the Court, 6 Wharton, 415 ; 2 Watts & Sergeant, 142.