[PHILADELPHIA, APRIL 17th, 1841.]

FITLER and Another *against* MORRIS.

IN ERROR.

1. In an action of trover by a vendor of goods against the sheriff, who had taken the goods by virtue of a foreign attachment as the property of the vendees, who resided in Alabama, the goods having been marked with their names, and being on the pavement in front of the plaintiff's store at the time they were taken by the sheriff; it was *held*, that a clerk of the plaintiff, who stated these facts, might be asked "whether the goods had been paid for; and how they were to be paid."

2. Where a bill had been drawn and dated in Philadelphia by C. & H., who resided at the time in Montgomery, in Alabama, upon a certain firm in Mobile, in Alabama, it was *held* that a protest by a notary in Alabama, under his seal, stating that he had given notice to the drawers, was not sufficient evidence of the notice; and that a letter put into the post office by the notary, addressed to C. & H. at Philadelphia, was not a sufficient notice.

ERROR to the District Court for the City and County of Philadel-

phia, to remove the record of an action on the case brought by William H. Morris against Daniel Fitler, Esq., sheriff of the city and county of Philadelphia, and Robert Miller.

The plaintiff declared in trover for certain shoes, hats, and other merchandise, of the value of $500.

The defendants pleaded not guilty; upon which issue the cause came on for trial before STROUD, J., on the 5th of November.

The plaintiff gave in evidence a writ of foreign attachment issued out of the District Court to June term, 1839, directed to the defendant, Fitler, in a suit wherein Hill & Janney were plaintiffs, and Clements & Hall were defendants; under which writ the goods in question were taken possession of by the defendants.

The counsel for the plaintiff then called one John T. Walton, a witness on behalf of the plaintiff, who, being duly affirmed, said, that he was an assistant in the store of the plaintiff, who kept a shoe store in the city of Philadelphia. The witness sold the goods mentioned in the declaration to a certain Mr. Graham, the agent of Clements & Hall. " Clements & Hall reside in Montgomery, Alabama. Mr. Graham was their young man, who came to this city expressly to buy goods for them. They were not in Philadelphia at the time of the purchase. Mr. Graham personally laid aside the goods, at the prices marked in the invoice. An invoice was furnished to Mr. Graham; the goods were packed up in boxes and cases, marked ' Clements & Hall, Montgomery, Alabama.' On the 25th of March, 1839, the boxes and cases were standing on the pavement, in front of Mr. Morris, the plaintiff's store, to be sent away in the afternoon. Mr. Graham said he had freighted a vessel for this purpose. On the morning of the day the goods were to be sent away, they were carried off in drays by the sheriff's officers. They were standing on the pavement, in front of the store, when they were taken away. The plaintiff had made inquiry about the standing of Clements & Hall; and, after making inquiry, he agreed to sell them the goods in question."

The plaintiff's counsel then asked whether the goods had been paid for; and how they were to be paid? The defendant's counsel objected to the question. The court permitted the question to be put to the witness, and the defendant's counsel excepted.

The witness said, " the goods were to be paid for by a draft of Graham, as agent of Clements & Hall, on Harwell, Stewart & Co., of Mobile, payable in nine months; which draft, Mr. Graham represented, would be accepted by the drawees on its being presented to them; but it was returned protested, for non-acceptance, on the 7th

of April, 1839." [All which was excepted to by the defendant's counsel, who tendered a bill of exceptions.]

The draft was exhibited and identified as the draft in question. It was then offered in evidence, together with a paper purporting to be a certificate of protest, by a person calling himself a notary of Alabama, to prove the non-acceptance. This was objected to, and admitted by the judge, to which admission the defendant's counsel excepted.

The bill or draft and protest were then given in evidence as follows.

" $440 56.
                                    Philadelphia, March 22, 1839.
Nine months after date, please pay to the order of William H. Morris, four hundred and forty dollars, fifty-six cents, for value received, and charge to account of
                                    Your friends,
                                        CLEMENTS & HALL,  .
                                        By WM. GRAHAM."
Messrs. Harwell, Stewart, & Co. }
                Mobile, Ala. }

· " By this public instrument of protest, be it known that on this second day of April, in the year of our Lord one thousand eight hundred and thirty nine, I, John Rolston, Notary Public in and for the county of Mobile, state of Alabama, duly commissioned and sworn, residing in the city of Mobile, in the said county, did receive from                                           a certain bill of exchange, being in words and figures as follows, to wit: (same as above.)                        ,                Of which bill the said                                required me, the said Notary, to demand acceptance, and in case of refusal or failure to obtain the same, to make a protest in the premises. Whereupon, at the request aforesaid, I, the said notary, did present the said bill at the office of Harwell, Stewart, & Co., and demanded acceptance from a person in charge thereof, who answered the bill could not be accepted; and whereupon, I, the said Notary, did protest, as by these presents, I do solemnly and publicly protest, as well against the drawers as against all others whom it may or doth concern, for all exchange, re-exchange, damages, costs, charges, and interest, suffered or to be suffered, for want of acceptance of said bill of exchange.

Notaries protest put in the post office this evening, addressed to the drawers, Philadephia, Pa.

This done and protested at Mobile aforesaid, in presence of John Doe and Richard Roe.

In testimony whereof, I, the said Notary, grant these presents under my signature and seal Notarial.

JOHN ROLSTON,

[L. S.]                                                    Notary Public."

The plaintiff here closed his case.

The defendant's counsel then called one William Ford, who being duly affirmed, said, that he had called on the plaintiff in April, 1839, in company with D. Hill, of the firm of Hill & Janney, the plaintiffs in the suit of foreign attachment; and that the plaintiff said in the course of that conversation, that when Mr. Graham called at his store to buy goods for Clements & Hall, he was not satisfied, but after seeing Mr. Eyre and Mr. Alexander Read, to whom he was referred for information of the standing of Clements & Hall, he sold them the goods with confidence. The conversation took place after the goods were taken on the foreign attachment.

The defendant's counsel then called A. Knorr, who, being duly sworn, said that he was acquainted with the handwriting of Clements & Hall; and that the letter then exhibited to him was signed by Mr. Hall of that firm.

The letter was then read in evidence as follows.

" Montgomery, Ala., March 5, 1839.

Messrs. Hill & Janney,

Gentlemen,—This will be handed to you by Mr. William Graham, who visits your city for the purpose of purchasing our spring supply of goods. This is Mr. Graham's first visit to your place on that business, and may possibly need some little assistance in making his purchases.

Your usual kind attention extended to him will be highly appreciated by

Your friends,

CLEMENTS & HALL."

The jury found for the plaintiff; and the defendants took this writ of error.

The following is the assignment of errors.

" 1. It was error to admit evidence of the non-payment of the goods sold by the plaintiff below to Clements & Hall.

2. It was error to admit a paper purporting to be the certificate of a notary of the state of Alabama, to be read in evidence without other proof.

3. It was error to admit a paper purporting to be the certificate

VOL. VI.—52

(Fitler *v.* Morris.)

of a person calling himself a notary, and professing to act under the authority of the laws of another state, without other proof.

4. It was error to admit a paper purporting to be a certificate of protest made by a person calling himself a notary of the state of Alabama, without other evidence to prove non-payment of the goods by Clements & Hall.

5. It was error to admit the reply of the witness, Walton, that the draft had been returned protested.

6. It was error to admit the draft as evidence of non-payment of the goods by Clements & Hall.

7. It was error to admit evidence of the protest of draft on the 7th of April, 1839.

8. The evidence is insufficient to sustain the verdict of the jury.

9. The verdict is against law.

10. The judgment is without competent evidence to support it.

11. The judgment is against law.

12. The evidence proves that the property in the goods sold, was vested, at the time of the attachment levied, in Clements & Hall.

13. It was error in the judge not to have non-suited the plaintiffs below.

14. It was error not to charge the jury that the sale by the plaintiff below to Clements & Hall, was complete, and vested the property in Clements & Hall."

Mr. *Tyson*, for the plaintiffs in error.

1. The doctrine of stoppage *in transitu* applies only as between consignor and consignee. Here the plaintiff was present by his agent, and took actual possession. In *Bolin* v. *Huffnagle*, (1 *Rawle*, 9,) it was held that the right of stoppage is gone when the goods are delivered to an agent. *Wood* v. *Roach*, (2 *Dall.* 150.) Again, it applies only in case of insolvency, of which there is no evidence here. *Wood* v. *Roach*, (1 *Yeates*, 177.) Most of the English cases go on the statute of frauds, requiring delivery, which is not in force here. This is a contract at common law, and the sale is evidenced by the agreement. *Ross on Vendors*, 1, 5, &c.; 2 *Powell Contr.* 63; *Comyn Contr.* 79; *Chitty Contr.* 108–9. Actual payment was immaterial. There was a regular invoice, and the goods were marked with the names of the vendees; a vessel was freighted for the purpose. The sale was on a credit of nine months, and the draft was taken on a representation that it would be paid. It was evidently the intention of the vendor to part with the property. The contract is said not to be complete if any thing remains to be done. *Hanson* v. *Myer*, (6 *East*, 614.) Here nothing

remained to be done. In *Whitehouse* v. *Frost,* (12 *East,* 614,) and *Stoveld* v. *Hughes,* (14 *East,* 308,) it was held that marking the goods was a sufficient delivery. So where goods were ordered, and left until they should be called for, having been weighed or measured, *Hurry* v. *Mangles,* (1 *Campb.* 452 ;) *Harmer* v. *Anderson,* (2 *Campb.* 343 ;) *Horncastle* v. *Farran,* (3 *Barn. & ·Ald.* 497 ; 5 *Eng. ,Com. Law Rep.* 356 ;) *Lickbarrow* v. *Mason,* (1 *Hen. Blackst.* 363 ;) *Tarling* v. *Baxter,* (6 *Barn. & Cres.* 360 ; 13 *Eng. Com. Law Rep.* 199.)

2. A notarial certificate is not evidence, unless when the notary acts under the law of Pennsylvania by the act of 1815, or when made in a foreign country. This was not a foreign bill. *Marius,* 2 ; *Byles,* 3. Before the union, Scotland was foreign in respect to England. These states are not foreign in respect to each other. In *Lonsdale* v. *Brown,* (4 *Wash. C. C. Rep.* 148,) Judge WASHINGTON ruled that a bill drawn in one state upon another was a foreign bill: and so it was held by the Supreme Court in *Buckner* v. *Findley,* (2 *Peters,* 586,) and in *South Carolina,* (1 *Const. Rep.* 100.) But in Virginia the legislature has declared them to be inland. Notice must be proved to the party to be charged. *Bayley on Bills,* 118. Besides, recovery can't be had for non-payment unless the bill has been protested for non-acceptance.·

Mr. *Fallon,* contra.

1·. The question of delivery don't arise. But we showed that it was a condition of the sale that the bill should be accepted; and the jury said so, and found that there was no delivery. The remedy was a *motion* for a *new trial,* which was made and discussed below. This court can't say whether the evidence did or did not prove the fact. There was no exception to the charge of the court below. The goods were to be sent away by the vendor in a vessel freighted by the vendee. There was yet something to be done.· In the cases cited, there was a delivery. In *White* v. *Shuttleworth,* (5· *Taunt.* 176; 1 *Eng. Com. Law Rep.* 64,) C. J..MANSFIELD said that there must be a symbolical delivery at least. *Whitehouse* v..*Frost* is virtually overruled. *Outwater·* v. *Dodge,* (7 *Cowen,* 87.) Here the vendor had not sent the goods to the wharf,·and they were at his risk. *Davis* v. *James,* (5 *Burr.* 2680.) *Dawes* v. *Peck,* (8 *Term Rep.* 330.) The attaching creditor has. no greater right than the vendee. *Anderson* v. *Hodgson,* (5 *Price,* 630; 2 *Eng. Exch. Rep.* 339 ;) *Copland* v. *Bosquet,* (4 *W. C. C. Rep.* 588 ;) *Dutilh* v. *Ritchie,* (1 *Dall.* 171 ;) *Camidge* v. *Allenby,* (6 *Barn. & Cres.* 373 ; 13· *Eng. Com. Law. Rep.* 201 ;) *Bunney* v. *Poyntz,* (4 *Barn. & Ald.* 568 ; 24 *Eng. Com. Law Rep.* 118 ;) *Dixon* v. *Yates,* (5 *Barn. & Ald.* 313 ; 27 *Eng. Com. Law Rep.* 861.) Possession by the sheriff was no delivery by the vendor. *Ward.* v. *Shaw,* (7 *Wend.* 404 ;) *Craven* v. *Ryder,* (6 *Taunt.* 433 ; 1 *Eng. Com. Law Rep.* 439.)·

2. The law is now to be considered as settled by *Lonsdale* v. *Brown, Buckner* v. *Findley,* and other cases, that the bill in this case was a foreign bill. *Watt* v. *Riddle,* (8 *Watts,* 545;) *Browne* v. *Philada. Bank,* (6 *Serg. & Rawle,* 487.)

Mr. *Meredith,* in reply.

When the goods were attached, the bill had not been dishonoured; and therefore the law of stoppage *in transitu* don't apply. The conditions of sale had been complied with. There is no evidence that the vendee was to pay the expense of drayage to the wharf. There was no evidence that the vendee was insolvent. The mere non-acceptance of the bill don't prove that. There was slight evidence of fraud. The plaintiff called on Janney, who did not mention his claim.

Suppose that this is to be considered as a foreign bill, has there been legal evidence of the dishonour of it? In the protest it must be stated to be at the request of the holder. Here it is in blank. The bill never was endorsed by the plaintiff, nor did he authorise it to be protested. *Chitty on Bills,* 362, &c. The notary's memorandum was not evidence of notice. *Chitty,* 498. A copy of the protest must be sent with the letter of advice.

The opinion of the court was delivered by

Huston, J.—In this case we have two bills of exception to testimony offered and admitted by the court. But in the errors assigned, and some part of the discussion here, errors were alleged and discussed, without any thing before us to show whether any such existed. The whole doctrine of what amounts to a sale of goods, and vests the right in the purchaser; how far the vendor may follow the goods where there has been fraud used by the buyer, either in misrepresentations at the contract, or where the goods had reached the buyer's residence, and he becomes insolvent, &c. &c., may be material in the case; but as the facts which would raise these points are not before us, except by suggestion of counsel, I shall say nothing about them further than the two bills of exception require.

The plaintiff proved by a witness, who was an assistant in his shoe store, that he sold the goods in question to a certain Mr. Graham, the agent of Clements & Hall, of Montgomery county, Alabama, at which place Clements & Hall reside. Mr. Graham came here as their agent, expressly to buy goods for them. Clements & Hall were not in Philadelphia at the time of the purchase. Mr. Graham selected the goods, which were laid off, an invoice made and given to him, and the goods were packed in boxes and cases and marked " Clements & Hall, Montgomery, Alabama." This would seem to have occurred on the 22d of March, 1839. On that day Graham gave Mr. Morris a draft, of which this is a copy:

(Fitler *v.* Morris.)

" $440 56.                              Philadelphia, March 22, 1839.

Nine months after date, please pay to the order of William H. Morris, four hundred and forty dollars and fifty-six cents, for value received, and charge to account of your friends,

Messrs. Harwell, Stewart & Co.,          CLEMENTS & HALL,
      Mobile, Ala.                              by WM. GRAHAM."

On the 25th of March, the goods thus packed and marked, were standing on the pavement in front of Mr. Morris's store, to be sent away in the afternoon. Mr. Graham said he had freighted a vessel for this purpose. In the morning of the day they were to have been sent off, they were carried away on drays by the sheriff's officers, (Mr. Fitler is the sheriff.) They were standing on the pavement in front of the store when they were taken away. The plaintiff had made inquiry about the standing of Clements & Hall, and after making the inquiry agreed to sell them the goods in question. The plaintiff's counsel then asked whether the goods had been paid for, and how they were to be paid? The defendant's counsel objected to the question. The court admitted it—and exception was taken.

The witness said they were to be paid for by a draft of Graham, as agent of Clements & Hall, on Harwell, Stewart & Co., of Mobile, payable in nine months, which draft Mr. Graham represented would be accepted by Harwell, Stewart & Co., on its being presented to them, but was returned protested for non acceptance on the 7th of April, 1839. (All this was excepted to by the defendant's counsel, and a bill of exceptions tendered and sealed.)

The paper book goes on to state, that the draft was exhibited and identified as the draft in question. It was offered in evidence, together with a paper purporting to be a certificate of protest by a person calling himself a notary of Alabama, to prove the non-acceptance. This was objected to and admitted; and another bill of exceptions sealed.

The plaintiff here closed his testimony.

Though it no where appeared on the paper book, it was stated and conceded, that the sheriff took the goods on an attachment at the suit of Hill & Janney against Clements & Hall.

Mr. Graham brought a letter to this city to Hill & Janney, from Clements & Hall, proved to have been written by Mr. Hall, stating that Mr. Graham had gone to this city to purchase for them a spring supply of goods, and requesting their assistance in making his purchases.

How far an actual agreement to sell goods and laying them off and giving a bill of them, vests the property in the purchaser, is perhaps by modern decisions, not exactly settled. Where all is fair on both sides, the law was at one time not disputed; but where the buyer is guilty of any fraud, and the seller is ignorant of the situation, in a pecuniary point of view, of the purchaser; where the purchaser has made any untrue statements; where the purchaser turns

out to be insolvent, and this unknown to the seller; or where something remains to be done before the delivery is to take place, the lines are not so easily drawn; and all of the contract and of the situation of the parties must be known before the extent of the respective rights can be ascertained. The cases are not reconcilable without very minute attention to the facts; and not then unless where by the aid of a jury intentions are found and taken into the account. There was then no error in the admission of the testimony in the first bill of exceptions, as the rights of the parties might depend on the contract, on how far representations were relied on. Whether any thing further was to be done by either party, &c. &c. it was proper to ask the question. The answer might decide the rights of the parties.

That part of the answer of the witness which states that the draft was returned protested, was not strictly evidence. These bills drawn on persons in different states, are considered here foreign bills, and the protest must be produced, and was so here. The statement of the witness was only introductory of the document, which was the next evidence offered here; and without production of the protest, it would not generally be evidence; it might be competent to prove by parol, when the notice of protest was received.

The next bill is to the admission of the protest. In the first place it seems to be settled that in the case of a protest of a foreign bill in a foreign country, there is no necessity to prove the signature of the notary, or his seal: to it all courts give credit. *Chitty on Bills,* 361, 2.

The protest was as follows.—[The learned judge here stated the terms of the protest.]

The objections to this protest were,

1. That there are blanks for the name of the holder or person presenting the draft for acceptance.

2. The proof of notice given is the notarial signature and seal; whereas it is not the duty of the notary, and if he undertake to do it, and does do it as agent, it ought to be proved by his oath in court, or deposition legally taken.

3. It ought to have been directed to Clements & Hall, at Montgomery, Alabama, and not to them at Philadelphia.

And 1st; it is laid down, that whoever is the holder of a bill, may present it for acceptance and have it protested for non-acceptance; though the person who protests for non-payment must be able to show a right to receive payment. All the forms of protest name the person at whose request the bill is presented; and there might be reasons why a bill could not be accepted without knowing who presented it; as if the drawer had given notice by letter to the drawee, that a bill on him was lost or stolen. On the other hand, as this bill was payable to Morris, and had no endorsement, the

(Fitler v. Morris.)

notary might be taken as presenting it for him.    This point was not urged, and I give no conclusive opinion on it.

2. Proof of notice.    There are cases where notice is not necessary.    We have no evidence that this is such a case—*prima facie* it is necessary.

In this state, it seems to be settled that giving notice is a notarial act, and a certificate by the notary evidence that it was given.    This evidence is liable to be rebutted; but in point of fact, through most, if not all of the state, the notary is called into court and proves the notice, as was done in *Stuckert* v. *Anderson*, (3 *Wharton*, 116.) Generally, if not everywhere, out of the operation of our act of assembly, the law is otherwise.    In *Morgan* v. *Van Tryon*, (2 *Johns.* 204,) giving notice of protest is said to be no part of the duty of a notary.    It would seem that the notary may be considered as the agent of the holder, and notice by him good as notice from the holder.    But he proves it by his oath.    *Church* v. *Barlow*, (9 *Pick.* 547.)    The certificate that notice was sent, was therefore no sufficient evidence of it.

3. The notice was of no effect, being directed to Clements & Hall at Philadelphia, when they resided at Montgomery, Alabama.

It is no excuse that the notary may have been ignorant of their place of residence.    The payee and holder of the bill, by his own evidence in the cause, did know, and if he intended the notary to act as his agent, he was bound to tell him to what place to send his notice; even some inquiry and answer not satisfactory, will not justify a notary or party in directing to a wrong place.    3 *Wharton,* 116.    The editor of the 8th American edition of *Chitty on Bills*, has added an appendix, in which, under title Demand and Notice, from page 809 to 816, many American cases are collected, and those on this subject scattered over the whole.    The result is well expressed in page 812.    7 *Halsted*, 268.    Where the holders know the place of residence, it will not do to allege ignorance on this point in the notary or his clerk, who in giving notice is so much the plaintiffs' agent, that what they know, they are bound to inform him.    See also 7 *Louisiana Rep.* page 814.

These things were all received in evidence under the notarial seal; and with them the plaintiff closed his testimony, and the plaintiff recovered.    There was error in admitting this proof of them, and in considering the proof of any effect.

It is very apparent that on another trial, many matters will be, or possibly may be proved; it may appear there was no necessity for notice; but I shall not indulge in conjecture.

Judgment reversed; and *venire de novo* awarded.