BENJAMIN D. HARRIS, PLAINTIFF IN ERROR, *v.* JAMES ROBINSON, DE-
FENDANT IN ERROR.

In the case of a protested note, it is not necessary for the holder himself to give
notice to the indorser, but a notary or any other agent may do it.
The object of the rule which requires the notice to come from the holder is to enable
him, as the only proper party, either to fix or waive the liability of indorsers.
Where a note was handed to a notary for protest by a bank, and it did, not appear
whether the bank or the last indorser was the real holder of the note, and the
notary made inquiries from the cashier and others not unlikely to know, respect-
ing the residence of the prior indorsers, and then sent notices according to the
information thus received, it was sufficient to bind such prior indorsers.
If the last indorser was the holder, the cashier of the bank was his agent for collect-
ing the note, and the evidence showed that in fact the last indorser knew
nothing more than the cashier.
The cases on this subject examined.
The facts being found by a jury, the question, whether or not due diligence was
used, is one of law for the court.
If due diligence is used in sending the notice to the indorser, it is immaterial
whether it is received or not.

THIS case was brought up, by writ of error, from the District
Court of the United States for the Northern District of Alabama.

It was an action brought by the indorsee (Robinson) against an
indorser (Harris) of a promissory note.

Robinson, the plaintiff below, was a citizen of the State of
Tennessee, and Harris a citizen of Alabama.

The note was as follows.

"$ 1,600 $\frac{0}{00}$. Eight months after date, we promise to pay Matth.
Burks, or order, sixteen hundred dollars ; payable and negotiable
at the Planters' Bank of the State of Tennessee, at Nashville, for
value received.    Dated in Lincoln county, Tennessee, 20th
November, 1837.

(Signed,)                    JOHN P. BURKS & Co."

(Indorsed,) "Matth. Burks, Benj'n D. Harris, J. Robinson."

The note not being paid at maturity, Robinson, in September,
1839, brought his action against Harris, in the District Court of the
United States for the Northern District of Alabama, which, after
several interlocutory proceedings, came on for trial at May term,
1843.

The jury, under the instructions of the court, found a verdict for
the plaintiff in the sum of two thousand and sixty-two dollars and
sixty-six cents.    It is impossible to give a clear idea of the in-
structions of the court without reciting all the circumstances of the
case to which the instructions referred.    They are all stated in the
bill of exceptions, which is as follows.

### The Bill of Exceptions.

In the District Court of the United States of America, for the
Northern District of Alabama.

In this case, the plaintiff brought his action against defendant

as indorser of a promissory note, and introduced the deposition of Alpha Kingsley, which is as follows.

### " *Deposition of A. Kingsley.*

" The said Alpha Kingsley, being about the age of sixty years, and being by me first carefully examined, cautioned, and sworn to testify the truth, the whole truth, and nothing else but the truth, makes oath, deposeth, and saith : that he resides in the city of Nashville, in the State of Tennessee, and more than one hundred miles from Huntsville, aforesaid, the place of trial of this cause ; furthermore he saith, I am now a notary public of Davidson county, in the State of Tennessee, and was such on the 23d day of July, 1838, duly qualified according to the laws of said State ; that on that day there came into my hands, as notary public, a promissory note, a true copy of which is herewith inclosed, marked A, and is made a part of this my deposition ; that at or about three o'clock of the said 23d day of July, 1838, I presented said promissory note at the counter of the Planters' Bank of Tennessee, at Nashville, where the same was payable, and demanded payment thereof, and was answered by the teller of said bank that it would not be paid ; whereupon, as notary public aforesaid, I did protest said promissory note, as well the drawers as the indorsers thereof, and duly recorded the same in my notarial book, and on the evening of the said 23d day of July, 1838, I deposited in the post-office at Nashville, Tennessee, in time to go by the first mail leaving Nashville after said demand and protest, notices of said demand and protest, directed to John P. Burks & Co., Matth. Burks, and Benjamin D. Harris, Madison county, Alabama, to each separately ; a copy of the notice so sent to Benjamin D. Harris is herewith *to be* inclosed, marked B, and is made a part of this my deposition. I was not, when these notices were forwarded, acquainted with the residence of any of the parties thus protested, or their nearest post-office ; and I made inquiry of those I thought were [not] unlikely to know, where would be the proper place to which to direct notices to them ; I applied, I recollect, to Nicholas Hobson, cashier of the Planters' Bank, who informed me they lived in Madison county, Alabama, but could not say where their nearest post-office was ; I also applied to Joseph Estell, who had resided in Madison county, and also had a very general acquaintance there ; he likewise informed me, that they all lived in Madison county, but did not know their nearest post-office. I knew of no other source from whence to derive information as to where to direct, and accordingly directed said notices ' Madison county, Alabama,' knowing that, from the general rules of the post-office department, they would be sent to Huntsville, the county seat.

(Signed,)			ALPHA KINGSLEY."

*Copy of Note.*

(Copy of the note, referred to in Alpha Kingsley's deposition, as marked A.)

" $1,600 $\frac{0}{00}$. Eight months after date, we promise to pay Matth. Burks, or order, sixteen hundred dollars ; payable and negotiable at the Planters' Bank of the State of Tennessee, at Nashville, for value received.    Dated in Lincoln county, Tennessee, 20th November, 1837.

(Signed,)                    ·JOHN P. BURKS & Co."
(Indorsed,) " Matth. Burks, Benj'n D. Harris, J. Robinson."

(Copy of the notice, made part of Alpha Kingsley's deposition. — B.)

" *Nashville, 23d July,* 1838.
" Mr. BENJAMIN D. HARRIS :

" Please to take notice, that a note drawn by John P. Burks & Co., payable at the Planters' Bank of Tennessee, at Nashville,. eight months after date, to the order of Matt. Burks, by him, you, and J. Robinson indorsed, for the sum of sixteen hundred dollars, dated the 20th day of November, 1837, was this day protested by me for non-payment, and the holder looks to you for payment as indorser thereof.

" Respectfully, your obedient servant.
" ALPHA KINGSLEY, *Notary Public.*"

And defendant introduced the deposition of N. Hobson, which is as follows.

" *Deposition of N. Hobson.*

" Interrogatories to Nicholas Hobson, on the part of the defendant.

" 1. Were you acquainted with the defendant, Benjamin D. Harris, in the years 1837 and 1838 ?

" 2. Do you know whether said Benjamin D. Harris resided in Tennessee or Alabama, in 1837 and 1838 ?

" 3. Have you any recollection of ever telling Alpha Kingsley, notary public, that the said Benjamin D. Harris resided in Madison county, Alabama, in 1838 ?

" 4. Were you acquainted with the plaintiff, James Robinson ? if so, state where he resided in 1837 and 1838.

" First. I was not acquainted personally with Benjamin D. Harris in 1837 and 1838.

" Second. I do not know whether said Harris resided in Tennessee or Alabama in 1837 and 1838.

" Third. I have no recollection of A. Kingsley having applied to me in reference to this particular case ; he often made application

to me in regard to the residence of persons living in Alabama ; I know that there are a great many of the name of Harris residing in Madison county, Alabama ; and from the fact of the drawers of the note living in Madison county, I may have told the notary public what my belief was as to the residence of Mr. Harris, but not from any personal knowledge I had of his residence.

" Fourth. I was acquainted with the plaintiff, James Robinson, he resided in Nashville in the years 1837 and 1838.

(Signed,)              N. HOBSON."

Also, the deposition of Joseph Estell, which is as follows.

### " The Deposition of Joseph Estell.

" *Question by defendant.* Were you acquainted with the defendant in the years 1837 and 1838 ?

" *Answer.* I was, and for some time before.

" *Question by same.* Do you know whether the defendant resided in Tennessee or Alabama in 1837 and 1838 ?

" *Ans.* I understood that he resided in Alabama in 1837 and 1838. I never saw him in Alabama, and how it was that I understood that he resided in Alabama in these years I cannot now recollect ; but such was my belief of his place of residence.

" *By same.* Have you any recollection of telling Alpha Kingsley, notary public, that the defendant resided in Madison county, Alabama, in 1838 ?

" *Ans.* I have no recollection that I ever told Alpha Kingsley that the defendant resided in Madison county, Alabama, in the year 1838 ; Mr. Kingsley has often inquired of us, that is, of my brother, while living, and myself, as to the residence of persons in Alabama, but my recollection does not serve me as to the name of any of those about whom he made inquiries.

" *By same.* Were you acquainted with James Robinson ? if so, state where he resided in 1837, 1838.

" *Ans.* I was acquainted with James Robinson ; he resided in Nashville, Tennessee, in the years 1837 and 1838.

(Signed,)              JOSEPH ESTELL."

Defendant also introduced Joseph Bradley as a witness, who proved that, previous to the maturity of said note, plaintiff had directed to him at Huntsville, Madison county, Alabama, notices to all the parties to the note, requesting him to hand them to the defendant and the other parties, the notices being intended to remind them when the said note would fall due. Witness directed the notices to the post-offices of the parties respectively, and to defendant at his post-office at Cross Roads, Madison county, Alabama ; but the notices of protest of said note were not sent to witness ; witness acted as plaintiff's friend in the matter ; there was no evi-

dence to show, that the notary knew who was the holder of the bill, or where he resided.

The court instructed the jury, that if they believed that the notary made the inquiries stated in his depositions, and sent notice to defendant as therein stated, he being ignorant of his true residence, that the notice was sufficient to charge the defendant, and that, under the circumstances of the case as proved, it was not necessary to make inquiry of the holder of the note as to the residence of the indorser: to which instructions the defendant excepts, and prays the court to sign and seal this bill of exceptions, which is done accordingly.

WM. CRAWFORD. [SEAL.]

The cause was argued by *Mr. Crittenden*, for the plaintiff in error, and *Mr. Brinley*, for the defendant in error.

*M.. Crittenden.*

It is insisted, on the part of Harris, that the instruction given by the court is erroneous : —

1st. In making the sufficiency of the notice depend exclusively on the jury's belief of the circumstances stated in the deposition of Kingsley.

2d. In instructing the jury, " that, under the circumstances of the case, it was not necessary (for the notary) to make inquiry of the holder of the note as to the residence of the indorser."

Harris, on the contrary, insists that " the circumstances of the case " were these, namely, that Robinson was the holder of the note ; that he was known as such to the notary ; that he lived in Nashville at the time, and might have been easily and immediately found, and could, in all probability, have given the required information as to the residence of Harris, and the post-office nearest to him.    It is insisted that all these circumstances are proved by or deducible from the evidence ; and that it ought to have been left to the jury, with the instruction, that, if they believed all these circumstances to have existed, then that it was necessary for the notary to have made inquiry of the holder of the note as to the residence of the defendant, Harris ; and that if, in consequence of his neglecting to make that inquiry, he misdirected the notice to Harris, then that such misdirected notice is not due notice, or such as entitled the said Robinson to recover in this action.

The general law is, that the holder must give notice.    The notary is a mere agent of his.    The inquiry as to Harris's residence ought to have been made from Robinson, who lived in Nashville. Story on Bills, 334, § 309 ; Chitty on Bills (8th edit.), ch. 10, pp. 515, 516, 524, 525 ; Bayley on Bills (5th edit.), ch. 7, § 2, pp. 280-283.

If the holder does not know, he should inquire.    Much more,

then, should the notary. A notice is more than a mere matter of form, for it might have enabled Harris to save the debt.

*Mr. Brinley,* for defendant in error, stated the case and then proceeded.

1st. A demand of payment of a note should be made on the last day of grace, and notice of the default of the maker be put into the post-office, if he live in another place, early enough to be sent by the mail of the succeeding day. Lenox *v.* Roberts, 2 Wheat. 363.

2d. If there be no post-office in the town where the indorser resides, the notice may be sent through the post-office to the post-office nearest to his residence. Freeman *v.* Boynton, 7 Mass. R. 483 ; Ireland *v.* Kip, 11 Johns. R. 231.

3d. The putting of notice into the post-office is sufficient, without proof of its having been actually received. Munn *v.* Baldwin, 6 Mass. R. 316 ; Miller *v.* Hackley, 5 Johns. R. 375 ; Dickins *v.* Beal, 10 Peters, 572 ; 1 Bell's Comm. (5th edit.) 418.

4th. If due diligence be used to give notice to the indorser, and he cannot be found, this is equivalent to due notice. Stewart *v.* Eden, 2 Caines's R. 121 ; Smyth *v.* Hawthorn, 3 Rawle, 355 ; 1 Bell's Comm. (5th edit.) 418.

5th. If the indorsee is ignorant of the indorser's place of abode, it is an excuse for not giving him notice ; and then it becomes a question of fact, whether he used due diligence to discover it. Bateman *v.* Joseph, 12 East, 433.

6th. Whether due notice has been given, all the circumstances necessary for the giving of such notice being known, is a question of law ; and the court will determine upon the facts. Where the facts are contested, the question of law becomes mixed with fact, and is for the decision of the jury, under instructions from the court upon the hypothetical state of facts claimed to be proved. Eagle Bank *v.* Chapin, 3 Pick. 180 ; Bank of North America *v.* Pettit, 4 Dallas, 127 ; Robertson et al. *v.* Vogle, 1 Dallas, 252 ; Hussey *v.* Freeman, 10 Mass. R. 86 ; Bryden *v.* Bryden, 11 Johns. R. 187 ; Davis *v.* Herrick, 6 Ohio Rep. 55 ; Bank of Utica *v.* Bender, 21 Wend. 643 ; Bank of Columbia *v.* Lawrence, 1 Peters, 578 ; Dickins *v.* Beal, 10 Peters, 572.

7th. The defendant excepted to that portion of the opinion of the court below which maintained, that it was not necessary to make inquiry of the holder of the note as to the residence of the indorser.

The inference is, that had such inquiry been made, the requisition of due diligence would be satisfied. The inference is sustained by the authorities. But there is no case which decides that such an inquiry of the holder is indispensable ; they decide that such an inquiry is proof of due diligence, not that it is the only proof of such diligence ; that it is sufficient, not that it is indispensable. For instance, inquiry of one of the parties to a bill as to

cc *

the residence of the indorser is due diligence. Beveridge *v.* Burgis, 3 Camp. 262.

The holder of a bill, as indorsee, went to the house of his immediate indorser to inquire the residence of the first indorser, and it was held to be due diligence. Bateman *v.* Joseph, 2 Camp. 461.

Where the notary made inquiry of the second indorser as to the residence of the first indorser, who informed him that notice to an office in a post town, which, it seems, was three miles and a half from the first indorser, and where he did not receive his papers and letters, it was held to be due diligence. Ransom *v.* Mack, 2 Hill, 587.

Where the holder, before the note became due, applied to one of the parties to ascertain the residence of the indorser, and he declined giving him any information, the holder was not obliged, after the bill became due, to renew his inquiries of that party. Firth *v.* Thrush, 8 Barn. & Cressw. 387.

8th. There is no evidence to show that the notary knew who was the holder of the note. He had a right to infer that it belonged to the Planters' Bank ; he accordingly inquired of the cashier where the parties lived, that he might notify them, and duly mailed notices of protest to Madison county, Alabama, their supposed place of residence. This was sufficient.

Notice of non-payment to an indorser was left at his boarding-house, where he was reported to reside ; but it seems, some weeks before the note fell due, he left Philadelphia for Europe, without the knowledge of the holder of the note. The notice was sufficient, as reasonable diligence had been used to ascertain the residence of the indorser. M'Murtrie *v.* Jones, 3 Wash. C. C. Rep. 206.

A bill was drawn and dated at New York, on persons residing in that city, who accepted it. The drawers resided in Petersburg, Virginia. The bill being protested for non-payment, two letters were put into the post-office, giving notice to the drawers, one directed to New York, and the other to Norfolk, Virginia, the supposed place of their residence. It was holden that this was sufficient notice, inasmuch as it did not appear that the holder knew where the drawers lived, and notice had been directed to their supposed place of residence. Chipman *v.* Liscombe, 1 Johns. R. 294.

Besides, there was no evidence to show that the notary, in the case under consideration, knew who was the holder of the bill, or where he resided.

If, after reasonable diligence on the part of the holder, the residence of the indorser cannot be ascertained, an excuse is furnished for a failure to give notice. The rule in such cases is, not that it is sufficient to send the notice to the last place of residence of the indorser, or to the place at which the bill or note bears date, but that it is sufficient to send it to the office believed to be the proper

Harris v. Robinson.

one, from information acquired, upon due diligence to ascertain it. Hoopes & Bogart v. Newman, Executor, 2 Smedes & Marshall's Rep. 71 (Mississippi Rep., January term, 1844), cites Chitty on Bills, 486 ; Nichol v. Bate, 7 Yerger, 305 ; Chipman v. Lipscombe, 1 Johns. R. 294.

9th. But suppose that the notary, knowing that Robinson was the holder of the note, had applied to him for information, what would have been his answer in regard to the residence of the parties ? Undoubtedly it would have been, that to the best of his knowledge they resided at Huntsville, Madison county, Alabama.

The defendant introduced Joseph Bradley as a witness, who proved, that, previous to the maturity of the note, Robinson had directed to him, at Huntsville, notices to all the parties to the note, requesting him to hand them to Harris and the parties, to remind them when the note would fall due.

There is nothing to prove that Robinson was informed that they were delivered to any place other than Huntsville. Of course, had the notary known that Robinson was the holder, and consulted him as to the residence of the parties, he must have answered, that notices had better be sent to Huntsville. The notary did so direct, substantially ; that is, he directed the notices, " Madison county, Alabama," knowing that, from the general rules of the post-office department, they would be sent to Huntsville, the county seat.

10th. There is no conflict between the testimony of the notary, and that of Messrs. Hobson and Estell ; the former swears that he applied to them for information as to the residence of the parties ; they could not recollect that he did in this case in particular, because he often inquired as to the residence of persons living in Alabama. His positive testimony, as to a fact which he was interested to ascertain, must be believed ; it more than counterbalances their want of recollection, it being of no interest to them to remember.

Chitty, in his Treatise on Bills (8th Amer. edit.), 486, says, that " the holder of a bill of exchange is excused for not giving regular notice of its being dishonored to an indorser, of whose place of residence he is ignorant, if he use reasonable diligence to discover where the indorser may be found " ; in support of this undeniable position, he cites Pothier de Change, n. 144. The reasoning of Pothier and of Pardessus (Droit Com., tom. 2, art. 426), in the opinion of Judge Story (in his Commentaries on the Law of Bills of Exchange, 350, 351), covers the case stated by Chitty, though they both treat in those sections of the *force majeur* (*vis major*) as an excuse for a non-compliance by the holder with the requisites of law, and not upon the question of ignorance of residence. The continental and civil law, which is identical with the common law and common sense, do not require impossibilities. The law does not presume that the holder of the paper is acquainted with the resi-

dence of the indorsers ; and if the notary or holder, after diligent inquiry as to the residence of the indorser, cannot ascertain it, or mistakes it, and gives the notice a wrong direction; the remedy against the indorser is not lost. 3 Kent's Comm, 107 ; Barr v. Marsh, 9 Yerger, 253 ; Story on Bills of Exchange, 334 – 347, in notes. The rule of due diligence " must not be such as to clog commercial operations." Bank of Columbia v. Lawrence, 1 Peters, 578.

Mr. Justice WOODBURY delivered the opinion of the majority of the court.

Under the bill of exceptions in this case, the proper practice in some important particulars respecting notices of non-payment of promissory notes and bills of exchange is involved. It appears that the defendant was indorser of such a note, and at the trial the court instructed the jury, that if they believed that the notary made the inquiries stated in his depositions, and sent notice to the defendant as therein stated, he being ignorant of his true residence, that the notice was sufficient to charge the defendant, and that, under the circumstances of the case as proved, it was not necessary to make inquiry of the holder of the note as to the residence of the indorser ; to which instructions the defendant excepts.

The substance of the inquiries which were made, as shown in the depositions, was, that the note, being " payable and negotiable at the Planter's Bank of the State of Tennessee, at Nashville," the notary, after presenting it and payment being refused, inquired of those " not unlikely " to know the residences or nearest post-offices of the indorsers, as they were not known to him. He recollects, as one of whom he inquired, the cashier of the bank, and was informed by him that Harris lived in Madison county, Alabama, but that he did not know his nearest post-office. The notary made similar inquiries of a Mr. Estell, who had resided in Madison county, but was found to be ignorant of the defendant's nearest post-office ; and the notary adds, that, knowing " no other source from whence to derive information as to where to direct " the notice, he " accordingly directed" this and others " to Madison county, Alabama, knowing that, from the general rules of the post-office department, they would be sent to Huntsville, the county seat."

The only " other circumstances of the case as proved," to which the judge probably refers, are, that the name of the present plaintiff appears on the back of the note as the last indorser ; that he was then an inhabitant of Nashville ; and that Joseph Bradley, a witness for the defendant, testified, that before the note reached maturity, he, then living at Huntsville, received notices from Robinson for Harris and the other indorsers, " requesting him to hand them to the defendant and the other parties," in order " to remind

Harris *v.* Robinson.

them when said note would fall due," and that he directed the notice for Harris to his post-office at Cross Roads, in Madison county.

It is further stated, as a part of the case, "there was no evidence to show that the notary knew who was the holder of the bill, or where he resided."

These being the facts as proved concerning the inquiries and circumstances to which the judge refers, he properly considered it a question of law, whether, upon those facts, if believed by the jury, it was necessary to make inquiry of the holder himself as to the residence of the indorsers, and whether the notice as given was in all respects sufficient to charge the defendant. Bank of Columbia *v.* Lawrence, 1 Peters, 583 ; 10 Peters, 581 ; Bryden *v.* Bryden, 11 Johns. R. 187 ; Hadduck *v.* Murray, 1 New Hamp. R. 140.

It is to be regretted, that some other facts were not agreed or referred to the jury ; such as the distance of the residence of the defendant, as well as of the Cross Roads post-office, from Huntsville ; whether he was accustomed to receive letters at the former place ; and who in truth was the holder of the note at the time it fell due. But the judge properly submitted to the jury whatever facts the parties chose to present ; and it is usually the best course thus to submit complicated questions of law and fact, accompanying them, however, with due legal instructions as to the rules which ought to govern. 3 Kent's Comm. 107. Then the instructions can as easily be revised as if the case was withdrawn from the jury, and, what is very desirable, the rules as to commercial paper can be preserved as uniform over the commercial world, and the holders of it have, as they ought to have, a fixed standard, on a like state of facts, for protecting as well as knowing their rights. 11 Johns. R. 187 ; 1 D. & E. 168 ; 1 New Hamp. R. 140.

The first objection that has been raised under the instructions or ruling of the court is, that the notice does not appear to have been given by the holder of the note. There is no evidence here to indicate any person except Robinson or the bank as the holder at that time, and probably at the trial it was taken for granted to be one of them, without making any point concerning it to the court or jury. Whichever it was, there is no pretence but that the notary came into possession of the note from the agent of the holder lawfully, and with a view, as agent, to make the demand, and if not paid to give due notice. When notes are left at banks for collection, the notaries may often be ignorant of the names of the holders, as the notes are handed to them by the cashier. He would as properly do this business when employed by an agent of the holder, as by the holder himself ; and having the note in either of these ways, he would be competent in law to deliver it up if paid, or, if not paid, to give notice of that fact to the indorsers. It has been adjudged, that any agent of the holders may give notice. Chitty on Bills, 527 ; Bank of Utica *v.* Smith, 18

Johns. R. 239, in point; Stewart v. Kennett, 2 Camp. R. 177, by Lord Ellenborough, 178; 3 Kent's Comm. 108; Stanton et al. v. Blossom et al., 14 Mass. R. 116; 7 ibid. 486; 9 ibid. 423.

The agent to collect the note may do it. Mead v. Engs, 5 Cowen, 303; 3 Bos. & Pull. 599; 2 Taunt. 38; 15 East, 291; 9 East, 347; 1 Camp. R. 349; Ogden et al. v. Dobbin et al., 2 Hall's Rep. 112.

And in 9 Yerger, 255, it was decided that a notary public is a suitable agent for this purpose. It was done by a notary of the agent in 2 Hall, 112.

The meaning of the rule that the holder must give notice is, not that he may not do it by an agent, as any other commercial act, but that it shall not be given by some other party on the bill not standing in the relation in which the holder does, and who has no right to give it and try to make the indorser responsible when the holder may be willing to waive a resort to him. Tindal v. Brown, 1 D. & E. 170; 7 Ves. jr. 597; 1 Esp. R. 333. In this case the notice is express, that "the holder looks to you for payment as indorser" of the bill, and the notary had the note in his possession (11 East, 117; 2 Camp. 178) in order to make demand and give notice in behalf of the holder.

The only remaining questions which are material are, whether any farther inquiry, and especially of the holder of the note, ought to have been made by the notary, as to the residence of the indorsers, before despatching the notices, and whether the notices sent were sufficient, considering the information he obtained, and his ignorance of the true residence of the indorsers. It was a part of the evidence, that the indorsers lived remote in another State, and that the notary was ignorant of the exact places of their abode.

Under such circumstances, he was undoubtedly bound to make inquiries of persons likely to be acquainted with their residences. This he did; and, among them, of the cashier of the bank, the person most likely to be acquainted with the place of abode of those making paper negotiable and payable at the bank, and of another person who had lived in the same county with the indorsers, and not getting entire certainty from either, he sent the notices, addressed as accurately as his information enabled him, to the county where they lived, and from the capital of which the notices would be likely to be forwarded to the indorsers.

This, in most cases, might be sufficient as to inquiry, and especially where nobody was known to reside near who was able and bound to give fuller and more accurate information on that subject. It would usually satisfy a jury that the due diligence had been exercised which, and which only, the law imposes. Chitty on Bills, 525 (8th Amer. ed.); 2 Camp. 461. But it is argued in this case, that the holder probably lived in Nashville, and could and ought to have been resorted to on this occasion for such information.

Harris v. Robinson.

Chitty on Bills, 525. This argument is not without force, and might be insuperable if the notary knew who the holder was, and did not obtain otherwise all the intelligence on this subject which the holder probably possessed. But the evidence not showing that he knew him, did he resort to the holder's agent, and obtain from him all the information on this point which the holder himself was likely to have possessed?

Supposing the bank to have been the holder, the cashier, its agent, was resorted to, and doubtless gave all the intelligence in possession of the bank on this subject.

But supposing Robinson to have been the holder, which is the only other probable presumption on the evidence, and which is contended for by the defendant, and then the cashier was doubtless his agent to collect the note, and received from Robinson all he knew as to the residences of the prior indorsers, and communicated it to the notary when applying to him on the subject. This is not only the general inference from what would be likely to take place on such occasions, but is strengthened in this case from the testimony of Bradley, on the part of the defendant, saying that Robinson, a short time prior, had sent notice to him at Huntsville for these parties, stating when the note fell due, and that he requested him to hand them to these indorsers. From this it is obvious that Robinson supposed they resided in Huntsville, or he would have sent the notices to a different place ; and he would not probably have desired a resident of Huntsville to *hand them* to the indorsers, unless he believed they lived in the same place.

There can be little doubt, on this evidence, that the real holder, whether the bank or Robinson, did give to the cashier all the information the holder possessed on this subject, and that the cashier communicated the same to the notary, and that the latter would have obtained no more had he known and resorted to the holder in person, and that the cashier, in conforming to this information, by addressing notices to Madison county, supposing that, by the rules of the post-office department, they would be sent to Huntsville, the county town, did all which duty required of him.

Beside the light flung on this subject, and favorable to this conclusion, by some of the general positions in the authorities cited at the bar, there are several precedents which bear more directly on a state of facts such as exists in this case, and which deserve special notice, as they fortify the correctness of the views we have presented.

In Stewart v. Eden, 2 Caines, 121, the court ruled, that the holder was bound to inquire no further than a reasonable and prudent man should, and said, " We do not exact from him every possible exertion," or inquiry. Only " ordinary diligence " is required in inquiring. Catskill Bank v. Stall, 15 Wend. 367. Only " reasonable diligence." Fisher v. Evans, 5 Binney, 543. So in Chap-

man v. Lipscombe, 1 Johns. R. 294, where a bill was drawn and dated in New York city, on persons there, and accepted, but protested afterwards for non-payment, and it did not appear that the holder knew where the drawers lived, but sent two notices to them, one addressed to New York and one to Norfolk, it was held that they were good, though the drawer in fact lived in Petersburg.

In that case, inquiry was made at the banks and elsewhere, and notice was sent in conformity with the information received ; but he did not inquire of the acceptors, who lived in New York, and could have told him correctly where the drawers lived.

In 3 Kent's Comm. 107, it is laid down, that notice need not always be sent to the post-office nearest to the indorser's residence. It suffices, if sent to the nearest which can be ascertained on due inquiry.   And in 1 Peters, 578, and 2 Peters, 551, where a notice like this was addressed to the indorser, as belonging to the county in which he lived, the same rule is recognized.   It is true, that there the party in fact resided near the county seat, or received some of his letters there, about which there is no particular proof here ; but it is said to be proper to address a notice in that way, " if after due inquiry it is the only description within reach of the person sending the notice."

It is enough to send the notices to the place where the information received reasonably requires him to send them.   2 Car. & Payne, 300 ; 1 Barn. & Cressw. 243 ; Bank of Utica v. Davidson, 5 Wend. 587.   If the place it reaches is the wrong one, he is then not in fault.   5 Yerger, 67.   All his duty in this case is to use " ordinary diligence " on the subject, and not to insure at all events that the notice actually reaches the indorser.   1 Peters. 582 ; 10 ibid. 581.

In Barr et al. v. Marsh, 9 Yerger, 255, it was held, that the holder was not bound or presumed to know where the indorser lived.   But it was enough if the agent of the indorsee or holder made due inquiry, and directed the notices to the places indicated by the information, though wrong.   It was the best that could be done under the circumstances.   Nichol v. Bate, 7 Yerger, 307 ; Dunlap v. Thompson et al., 5 Yerger, 67.   Where so many post-offices exist, the residences of parties change so often, and people live so remote from each other, as in this country, it would clog the circulation of negotiable paper if the holder or his agent was bound to know every alteration in the residence of indorsers. The inquiries were at the bank, and of other persons, in the case of Barr v. Marsh, much as in this instance.

In Sturges et al. v. Derrick, Wightwick Exch. Cas. 77, an inquiry was made of the son of an indorser as to his residence, and he did not know it, and the court held, that " sufficient diligence had been used."   And in Stuckert v. Anderson, 3 Wharton, 116, the case itself on examination shows that an inquiry of the officers

of the bank where the note was discounted is deemed sufficient, if there be no others near who are likely to know more as to the residence of the indorsers.

Some cases, it is true, have been more stringent, such as 13 Johns. R. 434, and 3 Camp. R. 262 ; but they do not contradict our conclusions, as in the first one the notice was sent to a wrong place quite remote, and the inquiry is said to have been limited ; while in the last, no inquiry was made except at the " *house* " where the bill was payable. Most of the cases referred to on this point, of due diligence in making inquiry, are rather cases as to due diligence in respect to the time when the notices are sent.

Some of those, as bearing on this, allow a very liberal time to make inquiries where the residence is remote (2 Barn. & Cressw. 246 ; 8 ibid. 393 ; 2 Dowl. & Ryl. 385 ; 2 Mood. & Ry. 359) ; and only require the notice to be sent as soon as information is obtained under proper exertion (1 Barn. & Cressw. 245 ; Gow's R. 81 ; 2 Camp. R. 462). And some go so far as to excuse giving notice at all, if the place of residence at the time is unfixed (4 Camp. 285), or cannot be ascertained (10 Peters, 580, and 9 Wheat. 591, before quoted). In the case now under consideration, then, the conclusion seems well sustained, that reasonable inquiries were made as to the residences of the indorsers, and notices promptly despatched, by a proper agent, in conformity with the information received. Whether the notices were actually received or not, and whether, if received, it was not as soon as if they had been directed to the Cross Roads post-office, does not appear, nor is it material, as the circumstances before mentioned show due diligence, and thus make out a sufficient case, whether the notices ever reached the indorsers or not. Let the judgment below be affirmed.

Mr. Justice McLEAN.

I dissent from the opinion of the court in this case with regret.

The Circuit Court instructed the jury, " that if they believed that the notary made the inquiries stated in his deposition, and sent notice to the defendant, as therein stated, he being ignorant of his place of residence, that the notice was sufficient to charge the defendant ; and that under the circumstances of the case, as proved, it was not necessary to make inquiry of the holder of the note as to the residence of the indorser."

The note was given by John P. Burks & Co. to Matth. Burks, for sixteen hundred dollars, in eight months from its date, payable and negotiable at the Planters' Bank of the State of Tennessee, at Nashville. It was indorsed by Matth. Burks, Benjamin D. Harris, the defendant below, and also by J. Robinson, the plaintiff. The note does not appear to have been negotiated at the bank. A. Kingsley, the notary, made a demand of payment at the bank when

the note become due, but it does not appear who delivered it to him. Notices of non-payment were directed by the notary to Matth. Burks and Benjamin D. Harris, the two first indorsers, to Madison county, Alabama.

He did not know where these indorsers resided, but Hobson, the cashier of the bank, to whom he applied for information as to their place of residence, informed him that they lived in the above county and State. Similar information was communicated to him by Joseph Estell, but neither of these individuals knew the post-offices nearest to the respective indorsers.

Bradley, a witness, stated, that, previous to the maturity of the note, Robinson directed to him, at Huntsville, Madison county, Alabama, notices to all the parties to the note, requesting him to hand them to Harris and the other parties, stating the time when it would become due. And that witness directed the notices to the respective post-offices of the parties. To Harris, he directed the notice to the post-office at "Cross Roads," Madison county, Alabama.

On this state of facts, the court instructed the jury, "that the notary was not bound to inquire of the holder as to the residence of the indorsers."

The notary did not act for himself, but as agent of the holder; and it was proved that Robinson, who appears to have been the holder, resided in the same town with the notary, and knew the proper direction for the notices. Now the holder is bound to give the notice himself, or through his agent; and can he evade the law by employing an agent who is ignorant of the residence of the indorser, which is known to himself. He knows where the indorser resides; is he not then bound to direct the notice as the law requires? It is a new principle in the law of agency, that the knowledge of the principal shall not affect him, provided he can employ an agent who has no knowledge on the subject. The holder is bound to communicate to the notary all the knowledge he has, so that the notice may be properly directed. And if this be not done, and the notice is improperly directed, the holder loses his recourse against the indorser. This seems to me to be clear of all doubt.

In the case of Preston v. Daysson et al., 7 Louisiana Rep. 7, it was held, "that the holder of a bill or note ought not to avail himself of the ignorance of the notary as to the residence of the indorsers in giving them notice of protest; if he knows, he must disclose their residence, or it seems that his neglect will discharge the indorsers." And this is the case now before the court.

There was no proof that the notary knew where Robinson, the plaintiff below, resided; but it is proved that he lived in the same town, his name being on the note, and from the fact that the notary gave no notice to him, as indorser, it is clear that he knew he was

the holder.　In Hill v. Varrell, 3 Greenl. 233, it.was held, " that where the residence of the drawer of a bill is unknown to the holder, he ought to inquire of the other parties to the bill if their residence is known to him."　And in Hartford Bank v. Stedman, 3 Conn, Rep. 489, " where the holder, who was ignorant of the indorser's residence, sent the notice to A., who was acquainted with it, requesting him to add to the direction the indorser's place of residence, it was, held sufficient."

" If the holder of a bill uses reasonable diligence to discover the residence of an indorser, notice given as soon as this is discovered is sufficient."　Preston v.·Daysson et al., 7 Louisiana Rep. 7.　In Beveridge v. Burgis, 3 Camp. 262, Lord Ellenborough said, — " Ignorance of the indorser's residence may excuse the want of due notice, but the party must show that he has used reasonable diligence to find it out.　Has he done so here ?　How should it be expected that·the·requisite information should be obtained where the. bill was:payable ?　Inquiries might have been made of the other persons whose names appeared upon the bill," &c.　In Bateman v. Joseph, 12 East, 433, "in an action by an indorsee against the payees and first indorser of a bill, it appeared the plaintiff received notice of its dishonor on the 30th of September, in time to give notice to the defendant on that day ; he gave no notice, however, until the 4th of October ; to excuse which, his clerk proved that the plaintiff did not know the defendant's residence until that day.　Lord Ellenborough left it to the jury, whether the plaintiff had used due diligence to find the defendant's residence."

In Story on Promissory Notes, 370, note 1, it is laid down, — " That merely inquiring at the house where a bill is payable is not due diligence for finding out an indorser.　Inquiry should be made of some of the other parties to the bill or note, and of persons of the same name."　And again, in page 368, note, — " To excuse the not giving regular notice of the dishonor of a bill to an indorser, it is not enough to show that the holder, being ignorant of his residence, made inquiries upon the subject at the place where the bill was payable ; he should have inquired of every other party to the bill."

There is no pretence that the bank was the holder of this bill. For the evidence showed that the notary did inquire of the cashier of the bank where the indorsers resided.　But the court charged, that, under the circumstances, it was not necessary for the notary " to make inquiry of the holder of the note as to the residence of the indorser"; the court, therefore, referred to Robinson as the holder, and not to the bank.　This charge is wholly inconsistent with the supposition that the note was discounted by the bank, for then it would have been the holder, and the·proper inquiry, as to the residence of the indorsers, was made of it.　The note bears no marks of its having been discounted.　That Robin-

son was the holder appears from the notice he gave to the parties when the note would become due, from the fact that he was not notified as an indorser, and also that he commenced suit as the holder, after the dishonor of the note.

The turning point in the case is, whether the holder, in failing to give the proper direction to the notices by his agent, the notary, is not answerable for the knowledge he possessed of the residences of the indorsers, which he failed to communicate to the notary. I care not whether or not Robinson knew the post-offices of the indorsers. He had communicated with them through Bradley, the witness, and if the notices had been thus sent, the law required nothing more.

It will be observed, that the cases cited show the duty of the holder as to giving notice. And it is believed no case has been reported, except the one cited from Louisiana Reports, where it has been supposed that a principal having knowledge of the residence of the indorsers could excuse himself from giving notice to them by a want of such knowledge in his agent. That the notary knew Robinson was the holder is conclusively shown, as before remarked, by not treating him as an indorser. His name was upon the note as an indorser, and he must have understood the purpose for which the indorsement by him was made.

All the authorities say the holder is bound to use reasonable diligence to ascertain the residence of the indorser; and when he attains that knowledge, is he not governed by it? And if so, is he not equally bound to communicate it to his agent whom he may employ to give the notice? A denial of this principle will overthrow the doctrine of notice, as established for more than half a century.

I think the judgment should be reversed, and the cause remanded for a *venire de novo*, in the Circuit Court.

Mr. Justice McKINLEY dissented also.