HEARD NOVEMBER TERM, 1878.

CASE No. 713.

## THE CENTRAL NATIONAL BANK v. AMY G. ADAMS.

Notice of dishonor of a promissory note was sent by mail, addressed to an endorser in care of the maker, at Adams' Cut, where there was no post-office, under information received by the notary, after the exercise of due diligence, that Adams' Cut was the endorser's post-office; the post-office nearest to Adams' Cut was one of the endorser's post-offices; the notice never reached the endorser or the maker—*held*, that due diligence had been used, and that the endorser was not discharged.

Before ALDRICH, J., at Richland, July Term, 1878.

This case came up on appeal from an order of the Circuit judge, confirming the report of Hon. C. P. Townsend, special referee, to whom it was referred to hear and determine the same; he having heard the cause while a Circuit judge, without a jury, by consent, and resigned his office before rendering a decision. The judgment was for the plaintiff. The facts are sufficiently stated in the opinion of the court.

*Messrs. W. H. Wigg* and *J. D. Pope*, for appellant.

1. What is the contract of endorsement?

1 *Dan. on Neg. Inst.*, § 667; 1 *Pars. on B. & N.* 353–356; *Story on Bills*, § 109; *Chit. on Bills* *214.

"And in default of notice the party entitled to notice is at once discharged." 2 *Dan. on Neg. Inst.*, § 970; *Byles on Bills* *231.

2. How can notice be effected? (1.) By mail, addressed to the party at his proper post-office. (2.) By personal service only, if the party resides in the town or city, at his residence or place of business. (3.) By special messenger, if there be no post-office communication, and the party does not reside in the town or city.

If sent by special messenger and a delay longer than by regular mail ensues, this will discharge the endorser. *Story on Bills* *295; *Byles on Bills* *220. Where notice is to be sent by gen-

eral post, it should be in writing and properly directed, or it may be fatal. *Story on Bills* 300.

3. Has notice been given to Amy G. Adams?

If it is contended that notice was sent by mail, we answer: (1.) That it was not addressed to Amy G. Adams. (2.) That it was not sent to her regular post-office—Grovewood. (3.) That it was addressed to no post-office at all, "Adams' Cut" being no post-office. 1 *Pet.* 580; 1 *Am. Lead. Cas.* 396, *note* 400; 2 *Rich.* 339. It must be duly directed to post-office of endorser and directed to him. *Story on Bills* 227–382.

The notice here is fatally defective. The bank—(1.) Employed the mail, but directed the letter to no known post-office. This is fatal. (2.) The bank does not direct the notice to Mrs. Adams, at her post-office, but to the *care of James P. Adams*, not at *his* post-office even, but to a place that is not a post-office at all. This is fatal. (3.) The bank uses the mail, but addresses the letter [to James Adams, at a place that is not a post-office, and then employs him as the messenger to *pick up the letter somewhere*, and asks the messenger to deliver the notice to Mrs. Adams. (4.) The evidence shows that Mr. James P. Adams, the bank's messenger, never received the letter. But is it diligence to direct a notice to the endorser and to use as its messenger the very person *whose interest it was to destroy the letter and not deliver the notice?*

The fatal error on the part of the notary is in addressing to a place, within a few miles, which place was not a post-office. Inquiry at the public post-office would have given the information; to fail to do so was negligence.

*Mr. F. W. McMaster,* contra.

1. The notary exercised all the diligence required by the law. *Dan. on Neg. Ins.,* § 1115; 2 *Rich.* 338; *Chamb. on Com. & Neg. Pa.* 147; *Story on Bills,* § 300.

2. As to the post-office. *Pars. on Notes* 490, 495, 522, 527; *Story on Bills,* § 387; 1 *Johns.* 294; 1 *Pet.* 580; 2 *Pet.* 547–552; 1 *Pick.* 401; *Dan. on Neg. Ins.,* § 1015, *notes*.

3. Inquiry sufficient. 21 *Wend.* 643; 9 *How.* 552.

4. Mrs. Adams at fault. *Chamb. on Com. Pa.* 148.

April 15th, 1879. The opinion of the court was delivered by

McIVER, A. J. This was an action against the defendant as endorser of a negotiable note, and the sole question raised by the appeal is whether the plaintiff used due diligence in giving notice of the dishonor of the note. The facts are undisputed, and are as follows: On the 25th of September, 1875, James P. Adams executed his note payable to Amy G. Adams, who, as an accommodation, endorsed the same to the plaintiff. The note not being paid at maturity, it was protested, and notice of non-payment was, in due time, sent by mail, postage pre-paid, in a letter addressed to "Amy G. Adams, care of James P. Adams, Adams' Cut." There was no such post-office as Adams' Cut, but the instructions to mail agents, in case a letter is directed to a place where there is no post-office, are to leave it at the nearest post-office, and Gadsden is the nearest post-office to Adams' Cut, on the South Carolina railroad. The appellant lives equidistant between Gadsden and Adams' Cut, and letters for her frequently came to Gadsden, which were taken out by her friends and servants. The letter containing the notice in question was never received, either by Mrs. Adams or James P. Adams. The regular post-office of appellant, "until the last two years," was Gadsden, since which time Grovewood has been her post-office. Owing to the want of date as to when the testimony was taken, it is impossible to say when these "last two years" commenced to run, and as the case does not show the date of the trial, we have no means of determining when it was that appellant's post-office was changed from Gadsden to Grovewood, or whether such change had been made before or after the maturity of the note. All that we know is, that the note became payable on the 5th of October, 1875, and the original hearing before Judge Townsend, when the testimony was taken, was some time in the latter part of the year 1877. The appellant lives about a mile and a half from Grovewood and four miles from Gadsden. James P. Adams testified that he never took out Mrs. Adams' letters; that Grovewood was his post-office, but he occasionally got letters directed to him at Gadsden and Hopkins,' and that he had received' private letters dropped at Adams' Cut, but not through the mails. The notary who sent the notice to Mrs. Adams got

his information as to Mrs. Adams' post-office from Walter Fisher, who frequently hunted in that neighborhood; was well acquainted with the residence of the defendant, and was the person from whom the notary always got his information when he wanted to send notices of protest into that neighborhood. When the facts are undisputed the question of diligence is a question of law. *Bank of Columbia* v. *Lawrence,* 1 *Pet.* 578; *Thompson* v. *Bank,* 3 *Hill* 82; *Bateman* v. *Joseph,* 12 *East* 433. And while it is unquestionably the duty of the holder to give notice to the endorser of the dishonor of a note, except in certain cases, not necessary to be mentioned here, he is only bound to use due diligence in communicating the notice, and is not required to see that such notice actually reached the party for whom it is intended. If he employ the usual and ordinary mode of conveyance, he has done all that the law requires of him. *Bank of Columbia* v. *Lawrence, supra.* The usual and ordinary mode of conveyance by which such notices may be transmitted, where the parties reside in different places, though in the same county, is the mail. *Foster* v. *Sineath,* 2 *Rich.* 338. And the usage of the officers employed in the various details of the operations of the post-office department, as prescribed by law and the rules and regulations of the department, are proper and important to be considered in determining a question of diligence. *Dickens* v. *Beall,* 10 *Pet.* 579.

Now in this case there is no doubt but that the notice to appellant was mailed in due time, there being no question raised as to that, and the only question is as to whether it was properly directed. It was not directed to any legal post-office, but by the regulations of the post-office department, it was the duty of the mail agent to leave the letter at the nearest post-office, which was Gadsden, so that the question may be considered as if the letter had been directed to Gadsden, which certainly had been the post-office of appellant, and for aught that appears to the contrary in the "case," was still her post-office *at the time the notice was sent,* though not her post-office at the time of the trial or at the time her testimony was taken. But we are not disposed to rest our decision upon this, and will assume that Mrs. Adams had changed her post-office before the notice was sent. Even upon this as-

sumption we still think that due diligence was used. For there is no evidence whatever to show that plaintiff knew or had any reason to suppose that she had changed her post-office; and the testimony shows that the letter containing the notice was directed in conformity with information obtained from a person who was likely to know her address. The rule is, that where the holder is ignorant of the address of the endorser, he is only bound to use due diligence by inquiring of persons likely to know to ascertain such address, and if, after using such diligence, the information which he receives, and upon which he acts, proves to be incorrect, it will be sufficient. *Harris* v. *Robinson*, 4 *How.* 336; *Lambert* v. *Ghiselin*, 9 *How.* 552; *Chapman* v. *Lipscomb*, 1 *Johns.* 294. As is said in *Harris* v. *Robinson:* "It is enough to send the notices to the place where the information received reasonably requires him to send them. If the place it reaches is the wrong one, he is not then in fault." Whether due diligence has been used in making such inquiries, is a question of fact. *Bateman* v. *Joseph*, 12 *East* 433; *Thompson* v. *Bank*, 3 *Hill* 82–3. And that question has been determined against the appellant, both by the referee and the Circuit judge.

In addition to this, the testimony shows that Mrs. Adams continued to receive letters from the post-office at Gadsden; and where persons are in the habit of receiving letters addressed to them at two or more post-offices, a notice addressed to either of such offices will be sufficient. It is not necessary, in such case, that it should be addressed to the office nearest to the residence of the party for whom the notice is intended. *Bank* v. *Carneal*, 2 *Pet.* 551. In *Saco National Bank* v. *Sanborn*, 63 *Me.* 340, (18 *Am. R.* 224,) the endorser had lived for many years in the town of Baldwin, but at the time the note upon which the suit was brought, became payable, he lived in the adjoining town of Denmark. The notice was directed to "Baldwin," but there was no post-office of that name, there being three post-offices in the town known by the names of "North Baldwin," "East Baldwin," and "West Baldwin." The notice was sent upon information received from persons most likely to know. It also appeared that at the time of the maturity of the note, there were two directions in common use in Saco which gave the defendant's

residence as Denmark : *Held,* that due diligence had been used. The court uses this language, which, we think, is a correct statement of the rule : "Proof that a letter containing the proper information, seasonably put into the post-office, directed to the endorser at the place where, after diligent inquiry, he was supposed to reside, will sustain the averment of notice, although, as matter of fact, the endorser did not reside there and the letter never reached him." And, again, the court says : "If the endorser changes his residence and does not give the holder notice of such change, and he does not, in fact, know it, and is not guilty of negligence in not knowing it, notice sent to his former residence is sufficient. And when nothing has occurred to suggest the idea of a change, no inquiry is necessary." These remarks apply with increased force to a change of post-office, which, of course, is not likely to be so notorious as a change of residence. If, therefore, as we have seen, by reason of the post-office regulations, the notice in this case, though in fact directed to Adams' Cut, was practically sent to Gadsden, the nearest post-office, which, to say the least of it, had been the post-office of defendant up to about the time the notice was sent, the notice was unquestionably sufficient, as there is no evidence whatever that the plaintiff knew or had any reason to suppose that her post-office had been changed.

It is argued, however, that the manner in which the letter containing the notice was directed, Mrs. Amy G. Adams, *care of .James P. Adams,* was objectionable. We are unable to perceive the force of this argument. The usual object of that mode of address is to expedite the delivery of the letter, and so far from its being any evidence of negligence, it would seem to point to a contrary conclusion. If the letter had been directed *to James P. Adams,* with a request that he would forward the notice enclosed to the defendant, there might be some force in the argument used at the hearing, that the plaintiff had employed Mr. Adams as a messenger to deliver the notice to Mrs. Adams. But such was not the case. The letter was directed *to Mrs. Adams,* and would have been delivered to her if she had called in person at the post-office or sent an agent or servant for her mail, whereas if it had been directed to Mr. Adams it could only have been

properly delivered to him or his order. By the mode of address which was adopted, her chances of receiving it promptly were increased rather than diminished, as, doubtléss, was the purpose in using that mode. Nor are we able to perceive the force of the argument that it was anything but diligence to direct a letter containing a notice to the endorser of the non-payment of a note to the maker of such . note—"the very person whose interest it was to destroy the letter and not deliver the notice." For this argument rests upon two assumptions, neither of which is well founded: 1. That the letter was directed to the maker of the note. 2. That a person who receives a letter directed to another in his care, is at liberty to open such letter and acquaint himself with the contents.

The judgment of the Circuit Court is affirmed.

Judgment affirmed.

Willard, C. J., and Haskell, A. J., concurred.