Herbert v. Servin.

---

JOHN W. HERBERT v. JOHN L. SERVIN.

1. Where a notary makes inquiry at the bank where paper is payable, and receives information from the cashier as to the residence of the endorser, upon faith of which the notary addresses the notice of protest, the jury are justified in finding that he has used due diligence.

2. An agreement between the holder of the note and a creditor of the maker, by which the holder was to accept fifty per cent. of his claim, to be secured by mortgage, which said assumption by the creditor so secured should be in full satisfaction of the holder's claim against the maker, does not discharge the endorser because the maker is a stranger to the agreement.

On rule to show cause.

A verdict was rendered against the defendant, Servin, in favor of the plaintiff, in an action upon a note dated May 1st,

1867, made by one Matthew D. Bogert, in favor of said Servin, for $5000, payable four months from date at the Farmers' and Merchants' Bank, at Matawan, N. J.

The note was endorsed first by Servin and then by the North River Brick Company, per B. Ackerson, treasurer. The note passed through the hands of one Austin Reed into the hands of the plaintiff, Herbert, who brought this suit against Servin, as endorser. This is on return to a rule to show cause why a new trial should not be granted.

Argued at February Term, 1879, before BEASLEY, CHIEF JUSTICE, and Justices WOODHULL and REED.

For the rule, *G. E. P. Howard.*

*Contra, G. Collins.*

The opinion of the court was delivered by

REED, J. The grounds of sufficient importance for discussion, upon which a new trial is asked, are three—

*First.* That the notary did not use a legal degree of diligence in ascertaining the residence or place of business of Servin, and so the notice of protest addressed to said Servin at New York City was insufficient to fix Servin's liability as endorser.

*Second.* That by an alleged arrangement concerning the giving of a new note by Bogert, Herbert extended the time for the payment of the note in suit, and so discharged the surety, Servin.

*Third.* That by an agreement between Herbert and one Ackerson, Herbert was to accept fifty per cent. of his claim against Bogert, said fifty per cent. to be secured by mortgage, which said assumption by Ackerson, so secured, should be in full satisfaction of Herbert's claim against Bogert—that this agreement discharged the endorser, Servin.

Upon the first point, I think, the jury were clearly warranted in finding that the notary exercised a degree of care

consistent with his duty. The notary's testimony was taken after a period of ten years had elapsed since the protest.

He testified to his custom, whenever the residences of parties are not known to him personally, to apply to the president or cashier of the bank where the paper is payable. He is quite sure that he applied to Mr. Johnson, the cashier of the bank, for information concerning the residence of Mr. Servin, and received the information which led to the direction of the letter to New York city.

This was certainly a proper source of information concerning the place of business or domicil of parties doing business through the bank. " It does not appear that he inquired of the officers of the bank," says Justice Whitehead, in giving his reasons for holding a notice of protest insufficient, in the case of *Hazelton Coal Co.* v. *Ryerson, Spenc.* 129–33.

In *Barr* v. *Marsh,* 9 *Yerg.* 255, and *Harris* v. *Robinson,* 4 *How.* 336, the fact that inquiries had been made at the bank was stated to be evidence of diligence in making inquiry.

Where, as in this case, there was evidence that inquiry was so made, and the information acted upon by the notary was so obtained, the jury were justified in finding that a proper degree of diligence had been exercised by the officer.

There was evidence in the case that Servin had, some time previous to the protest, an office in New York city. It was also in evidence, that the cashier to whom the notary applied for information had been informed of the change of the locality of Servin's office. But if the jury believed the latter testimony, still it did not affect the question of diligence, unless the cashier was the agent for the holder, and the knowledge of the endorser's whereabouts was in his mind at the time of inquiry. The jury may have disbelieved the testimony of Bogert concerning a conversation he had with Johnson, the cashier, in which he told Johnson that Servin's residence was in Warwick, Orange county; or that Johnson had forgotten a casual conversation with Bogert, had some time before the protest; or that Bogert's information as to

Servin's residence was not inconsistent with Johnson's supposition that his place of business was still in New York.

Upon the second point, the evidence tended to show that the proposed arrangement for the giving of a new note was, in its nature, usurious, and so never placed Herbert in a position in which he would have been prevented an instant from bringing suit on this note. It was also shown that 'the arrangement was fostered by Austin Reed, and was never authorized by, or assented to by, Herbert, and so did not bind him. The jury were warranted, on this branch of the case, to find as they did.

The third point relied upon by the counsel for the defendant, is the relinquishing of the claim against Bogert, resulting from a composition agreement already mentioned. But there are two difficulties in the way of according to this agreement the effect contended for by the defendants.

In the first place, Bogert is a stranger to the agreement. So far as it appears in this cause, he was entirely disconnected from the transaction. The agreement was signed by Herbert and one James Ackerson. From the recitals in the instrument, Ackerson appears to have been a trustee, with several others, acting for the creditors of Bogert. What power, if any, said trustees had from Bogert does not appear.

Again, by the terms of the composition deed, Herbert agreed that the assumption of fifty per cent. of Bogert's debt to him, by Ackerson, secured by mortgage duly executed and delivered, should be in full discharge and satisfaction of the said claim against said Bogert.

There was no proof of the execution and delivery of the mortgage.

By the terms of the agreement, the state of facts was not shown which would have operated to extinguish the claim against Bogert, and so discharge Servin, his surety. The case was fully and correctly left to the jury by the trial justice, and the rule to show cause must be discharged, with costs.