## OELBERMAN and others *v.* MERRITT.[1]

*(Circuit Court, S. D. New York.* February, 1884.)

CUSTOMS DUTIES—APPRAISER NOT ALLOWED TO IMPEACH HIS OWN VALUATION.
    A merchant appraiser appointed under section 2930 of the Revised Statutes
    is a *quasi* judicial officer, and will not be permitted to testify to his own
    neglect of duty.   To permit the awards of the important tribunal, which con-
    gress has established to appraise imported merchandise, to be overthrown on
    the assertion of one of its members made years afterwards, is clearly against
    public policy.   It is putting a premium upon incompetency, inaccuracy, and
    fraud.

Motion for a New Trial.

*D. H. Chamberlain* and *Eugene H. Lewis,* for plaintiffs.

*Elihu Root,* U. S. Atty., and *Samuel B. Clarke,* Asst. U. S. Atty.,
for defendant.

Before SHIPMAN and COXE, JJ.

COXE, J.   On the twenty-ninth day of June, 1879, the plaintiffs im-
ported from Germany 34 cases of silk and cotton velvet, in two in-
voices, containing 10 and 24 cases respectively.   The collector desig-
nated two cases from the former and three from the latter invoice,
and they were sent to the public store for examination.   The ap-
praiser advanced the entered value more than 10 per cent.   The
plaintiffs, thereupon, gave notice of dissatisfaction under section 2930
of the Revised Statutes.   The collector selected a merchant appraiser
to be associated with one of the general appraisers for the purpose of
instituting a re-examination of the merchandise as provided by law.
Before entering upon his duties the merchant appraiser took the fol-
lowing oath:

"I, the undersigned, appointed by the collector of the district of New York
to appraise a lot of silk and cotton velvets * * * do hereby solemnly
swear, diligently and faithfully to examine and inspect said lot of silk and
cotton velvets, and truly to report, to the best of my knowledge and belief,
the actual market value, or wholesale price thereof, at the period of the ex-
portation of the same to the United States in the principal markets of the
country from which the same was exported into the United States, in con-
formity with the provisions of the several acts of congress providing for and
regulating the appraisement of imported merchandise, so help me God."

Subsequently he made two reports, in which, after having stated
that he had examined the velvets with the general appraiser, he cer-
tified that the actual market value or wholesale price of the goods
was correctly stated in the itemized schedules which followed.   The
aggregate of his advance over the entered value was $9\frac{1}{2}$ per cent.
The general appraiser also made reports advancing the goods 17 3-10
per cent.   There being a disagreement, the collector adopted the lat-
ter valuation and levied the additional duty and penalty as required by
law.   The plaintiffs insist that the reappraisal was invalid because
the merchant appraiser did not diligently and faithfully inspect the

[1] Reversed. See 8 Sup. Ct. Rep. 151.

goods. The cause was tried at the February Circuit, 1883, and resulted in a verdict for the plaintiffs. The defendant now moves for a new trial. Upon the trial, a former decision by Judge SHIPMAN was relied upon as supporting the proposition that an appraiser might be called to impeach his own award. Although in that case—*Passavant* v. *The Collector*—the merchant appraiser was permitted to testify, the court did not have before it, or attempt to decide the question now presented for consideration. That question is: Was the merchant appraiser a competent witness to prove his own neglect of duty?

It is true that the counsel for the defendant might have made their objections more definite. We are, however, of the opinion that the exceptions to the admission of evidence and to the refusal of the court to direct a verdict fairly entitle them to present this question here. *Randall* v. *B. & O. R. Co.* 3 Sup. Ct. Rep. 322; *Gordon* v. *Butler*, 105 U. S. 553.

Stripped of all disguise the effort, on the part of the plaintiffs, was to induce the merchant appraiser to testify that he had not done what the law required him to do. In this they were partially successful, if they had not been, no question, upon any theory, could have been presented to the jury. In other words the only evidence of which to predicate illegality in the appraisement came from the lips of a man who took an oath that he would act legally, and subsequently certified over his own signature that he had done so. Should this evidence have been received? Appraisers occupy the position of *quasi* judicial officers, they have been aptly described as "legislative referees." *Tappan* v. *U. S.* 2 Mason, 406; *Harris* v. *Robinson*, 4 How. 336. The merchant appraiser is presumed to be, and in fact is, the special representative of the importer, and quite naturally, as was demonstrated by the evidence in this case, is somewhat biased against the government. The examination which he is required to make may take place when he is entirely alone, its extent is largely in his discretion. What he says of it and its sufficiency no one can contradict. The government, if he is permitted to testify, is left remediless and wholly at his mercy.

Thus may the solemn and definitive conclusion of the tribunal to which congress has assigned the duty of placing a value upon imported merchandise, be attacked in a collateral proceeding and swept away by the testimony of a negligent, forgetful or dishonest appraiser. The result, too, is infinitely more disastrous than in ordinary actions where verdicts and decisions are set aside and new trials ordered. No better illustration could be furnished than the verdict in this case. The evidence was overwhelming and hardly disputed that the goods were undervalued. The merchant appraiser admitted this, the inference to be drawn from this testimony is, that, being compelled to advance the value, his sole anxiety was to relieve the importer from the penalty; hence his valuation at $9\frac{1}{2}$ per cent. advance. Notwithstanding this, the government loses the penalty not

only, but also the duty, which upon the proof was clearly due. Manifestly the rules of evidence should not be relaxed to produce a result so inequitable. To permit the awards of this important legislative tribunal to be overthrown upon the assertion of one of its members, made years afterwards is, we think, clearly against public policy. To hold otherwise, would be, in effect, to allow the witness to deny his oath and stultify himself by an impeachment of his own finding,—to contradict a record by speculative and fallible testimony, in short it would set a premium upon imcompetency, inaccuracy and fraud. We do not intend to intimate that the evidence in the case at bar establishes more than forgetfulness, or perhaps, carelessness on the part of the merchant appraiser. The mischief is in establishing a rule under which ample opportunity is given for a complete reversal of the aphorism—"Corruption wins not more than honesty."

We have been referred to no case and are quite confident none can be found where this precise question has been decided. The weight of authority upon analogous questions, however, having reference to jurors, referees, arbitrators, and commissioners sustains the position here taken. Every objection to them applies with equal or greater force to an appraiser. What are the arguments against the admissibility of this testimony? It permits, it is said, a solemn record to be attacked by parol evidence, and that too in a collateral proceeding, it permits a witness whose memory is clouded and confused by a thousand intervening events to dispute the rectitude of a finding made when all was fresh and clear before him. It promotes litigation. It encourages bribery, trickery and fraud. These are some of the reasons; and which one of them does not apply to an appraiser? If a judicial officer or a juror may not testify to misbehavior on his part; if appraisers or commissioners under state laws cannot be heard to say that they did not sufficiently view or examine the land alleged to be damaged, if an arbitrator cannot impeach his own award, we fail to find any reason, founded upon authority, why the evidence here should stand.

As the conclusion reached upon this branch of the case necessitates a new trial it will not be necessary to consider the other propositions argued. It may be said, however, in view of all the testimony, and particularly that of the government appraiser, refreshed as it was by stenographic notes taken at the time, showing the nature of the examination and the part taken by the merchant appraiser, that the verdict should be set aside as against the weight of evidence; it being established by a great preponderance of testimony that every requirement of law was carefully obeyed

New trial ordered.

SHIPMAN, J., concurs